STURTEVANT *v.* ORSER *et al.*

The vendee of goods which had come to his possession, ascertaining his insolvency, deposited them in warehouse subject to the order of the vendor, and notified him thereof by letter: before the vendor had signi-fied his assent, the goods were attached by another creditor. *Held*, that the title of the vendor prevailed.

The delivery to the warehouseman was a rescission of the contract of sale by the vendee, and the subsequent assent of the vendor relates to the time of such delivery: *Per* SMITH, J.

An actual assent to the rescission by the vendor's agent is to be assumed in support of the judgment, upon a statement of facts in harmony with such actual assent, and the absence of any facts tending to repel such presumption: *Per* DENIO, J.

APPEAL from the Supreme Court. Action to recover a quantity of oil sold by the plaintiff to one Wing and delivered on board his vessel at New Bedford for transportation to New York for sale. Before the arrival of the oil, Wing became insolvent, and determined to return the oil to the plaintiff. On its arrival in New York, he directed it stored for the plaintiff with the defendant Kelly, and it was so stored. After this, on the 9th of July, he wrote the plaintiff what he had done, and that it was impossible for him longer to go on with his business and meet his payments, and saying that, immedi-ately on finding that he must stop, he stored the oil bought of the plaintiff, subject to his order on paying charges and freight. This letter was posted July 9, and received by the plaintiff's

clerk the same evening, the plaintiff being absent. The plaintiff's clerk immediately went to the residence of Wing, at Falmouth, Massachusetts, to learn where the oil was stored, found him the next day, July 10, and, upon ascertaining where the oil was, telegraphed to an agent in New York to take charge of it for the plaintiff. This telegram was sent him on the 11th of July. On the 10th of July, and before the receipt of the telegram by the plaintiff's agent, the oil was attached by a creditor of Wing. The plaintiff by his agent demanded the oil, and offered to pay charges and freight, but the warehouseman refused to deliver it, and this action was therefore commenced. The cause was tried at a Circuit Court in New York, and a verdict directed for the plaintiff for the value of the oil, $1,145, subject to the opinion of the court at general term. The court at general term rendered judgment for the plaintiff, and found a statement of facts which is annexed to the record, and finding, as a conclusion of law, that the debtor Wing had no property in the oil at the time the attachment was served. From which judgment the defendants appealed to this court.

*W. Bliss*, for the appellants.

*E. Terry*, for the respondent.

SMITH, J. The delivery of the oil on board the vendee's ship at New Bedford was unquestionably a delivery to Wing, and vested the property in him. The property, it is true, was to be transported to New York for sale, but it was to be transported by the vendee himself, who could have changed its destination or sold it absolutely on shipboard. After such delivery it was not subject to stoppage *in transitu*, for it was not in the hands of a carrier or middleman. (*Inglis* v. *Usherwood*, 1 East., 515; *Turner* v. *Trustees of Liverpool Docks*, 6 Eng. Law and Eq., 515; *Ogle* v. *Atkinson*, 5 Taunt., 759.)

But if this were not so, the vendee could not exercise the right of stoppage *in transitu*, and the vendor made no attempt to do so. (Story on Cont., § 816.) The plaintiff's right to

recover the oil must, therefore, be put upon other grounds to be sustained.

The case is quite parallel to that of *Atkins* v. *Barwick* (1 Strange, 165). In that case the defendants were mercers, living in London; and Cripps & Co., the assignors of the plaintiff, were traders at Penoyer, in Cornwall. On the 7th of April, 1715, the defendants, upon the order of Cripps & Co., sent them the goods in controversy, and gave them credit on their books for the amount. On the 18th of May, Cripps & Co., without the knowledge of the defendants, deposited the goods with a third person for the use of the defendants. On the 6th of June, Cripps & Co. wrote a letter to the defendants, stating that their affairs were in a bad condition, and that, for that reason, they thought it not reasonable that the last goods should go to other creditors; and that they had, therefore, not entered them in their books, but left them with a Mr. Penhallow, who had orders to deliver them to the defendants. On June 9th, a commission of bankruptcy was issued against Cripps & Co., and their effects assigned to the plaintiffs. The letter of Cripps & Co. to the defendants was not received by them till the 13th of June, which was the first notice they had of the delivery to Penhallow; and they immediately signified their consent to take the goods again.

This case, in all its essential particulars, is like the present case. The goods, as in this case, were delivered to, and the title vested in, the vendee; they were deposited with a third person by the vendee for the use of the vendor before the rights of creditors attached, and written notice of such deposit and of the failure of the vendee given to the vendor, and the goods actually attached before the vendor attempted to reclaim them.

In the decision of the case of *Atkins* v. *Barwick*, the chief justice held that "the delivery to Penhallow to the use of the defendants before the act of bankruptcy, and grounded on a good consideration, transferred the absolute property to them." FORTESCUE, J., said, that payment in satisfaction of the debt was a good consideration, and "we will intend an acceptance

till the contrary appears." EYRE, J., said: "The precedent debt is a sufficient consideration, and it vests before notice [the title, he means]; for it being to his benefit, a disagreement shall not be presumed."

I have quoted this case thus fully because it is a leading one, and, if good law, is quite conclusive of the case now under consideration. This case of *Atkins* v. *Barwick* has been much discussed and much questioned, but not in any case overruled. In *Harmon* v. *Fishar* (1 Cowp., 125), Lord MANSFIELD said of it, that, "with respect to the case of *Atkins* v. *Barwick*, the judgment seemed right, but the reasons wrong." In *Neate* v. *Ball* (2 East., 117), Lord KENYON discussed it, and said that Lord MANSFIELD had extracted the true ground on which that judgment, if it did not proceed, ought to have proceeded; namely, that the trader, finding himself in failing circumstances, very honestly did not accept the goods, but returned them. But this distinction is obviously unsound and untenable. The bankrupt had the goods in possession for some time. They were sent him the 7th of April, and were in his possession, and sent by him for deposit with the third person on the 18th of May, more than forty days after being delivered to the vendee, or to the carrier for him; and were in his actual possession when so deposited. The title to them had absolutely vested before such deposit. They were not intercepted by the way, or the order of purchase countermanded before the actual receipt of the goods. But Lord KENYON, and the whole Court of King's Bench, did recognize the case of *Atkins* v. *Barwick* as sound law in *Salte* v. *Field* (5 Term, 211). Speaking of the case under consideration, Lord KENYON there said: "I cannot distinguish this case from *Atkins* v. *Barwick* on principle; for in that case there had been a delivery of the goods by the seller, with the concurrence of all the parties interested. But the agreement of the parties to rescind that contract put an end to the sale, as if it had never taken place." ASHHURST, J., said: "The case in Strange applies to the present case." BULLER, J., said: "The principle on which the case of *Atkins* v. *Barwick* was

decided governs this." In *Smith* v. *Field* (5 Term, 402), the same court again affirmed the case of *Atkins* v. *Barwick*, and recognized it as sound law. The case has also been questioned in our courts. In *Berly* v. *Taylor* (5 Hill, 581), Judge BRON-SON discusses it, and, after referring to the various cases, says of it, that, " although it seems never to have been overruled, it would be difficult to support it upon principle without altering some of the facts." But this was in a dissenting opinion. And in the same case, Judge COWEN, who gave the opinion of the court, considers and discusses the case, and declares that it has never been overruled, adopts its reasoning, and affirms the principle upon which it was decided, as the same learned judge had done before in *Ash* v. *Putnam* (1 Hill, 310), where there was no dissent to the decision or opinion. Speaking then of the case of *Atkins* v. *Barwick*, he says: "There was either a resale or rescission, or a refusal by the vendee to accept. Call it which you please, the effect is the same. In one case, the property is revested in the vendors; in the other, it was never divested."

The difficulty in all the class of cases like the present has been to fix the point of time when the title of the vendor became revested. The right of rescission, or resale, is un-doubted; but the question is, whether the rescission or resale is consummated before the assent of the vendor to such rescis-sion or resale is actually given or expressed. The moment the minds of the vendor and vendee meet on the question, it is conceded, the contract is rescinded, or the property resold and the title revested. If the vendor was present at the same place with the vendee, delivery to him by the vendee in relin-quishment of the contract of purchase would, of course, com-pletely restore him to his original rights of property; but when the vendor and vendee live in different places, it has been claimed in many cases that the purpose of the vendee to restore the property was ineffectual, till the consent of the vendor to the rescission of the contract was given, and that, intermediate that period, the title remained in the vendee, and was subject to attachment or execution at the instance

of his creditors. That is the precise question now presented in this case.

Upon the principles which apply to sales, it is abstractly true that no title can pass till the bargain is complete, and that a contract is not consummated till the minds of the parties meet; and, strictly, this rule must also apply to agreements for the rescission of a contract. It is only upon the doctrine of relation, in such cases, that the title can be held to pass at the time of the delivery of the goods to the third person. This doctrine is generally alleged to apply in cases of trust; and it is upon this ground that the title can be held to pass at the moment the trust is created, as with cases of assignments in trust. Lord MANSFIELD, in *Alderson* v. *Temple* (4 Burr., 22–39), puts the case of *Atkins* v. *Barwick* on the proper ground. He said: "The Court of Chancery would have interposed and said 'the assignees should not have the goods without paying the price.' I think the determination was right; *and there was an actual delivery to a person who became a trustee.*"

The direction to hold in trust for the vendor, and to deliver to him, accompanied by a delivery to the warehouse-man, as was done in this case, and that of *Atkins* v. *Barwick*, is a parol transfer or assignment of the property to the vendor, and vests the property. The doctrine of relation in such case, Judge COWEN says, in *Berly* v. *Taylor* (*supra*), applies to a delivery of goods in trust. The delivery was held, he says of *Atkins* v. *Barwick*, to vest the property of the goods in them (the vendors) immediately, subject to be divested by the dissent. This was on the ground that the trust was beneficial, and the presumption was allowed although the vendors at the time knew nothing of the transaction.

This, I think, presents the true ground upon which the plaintiff's claim may securely rest. The delivery of the oil to Kelly, with direction to deliver it to the plaintiff, was a delivery by Wing to the plaintiff, and vested the title in him, unless he expressly disaffirmed the trust in his favor. The trust was irrevocable by Wing. He parted with all claim in or title to the property. He did all in his power to restore the pro-

perty to the vendor. He acted with an honesty which ought to be encouraged and commended, not overreached and nullified by any manner of technical rules at variance with equity and common justice.

But the plaintiff's title to this oil can be sustained upon the narrow ground mentioned by Lord MANSFIELD in *Harmon* v. *Fishar* (1 Cowp., 125), and stated by Lord KENYON in *Neate* v. *Ball* (2 East., 124), that the vendee "*did not accept* the goods." Wing, in this case, before the goods arrived in New York, refused to take them upon the purchase, provided for their storage with Kelly and delivery to the plaintiff, and immediately advised the plaintiff of the fact. Wing then had the goods under his personal control after they arrived at their place of destination. He restored them to the plaintiff in the only way practicable under the circumstances.

I think the judgment below right, and that the same should be affirmed.

DENIO, J. The law of *stoppage in transitu* has no application to this case. The oil was delivered to the purchaser on board his own vessel; and, moreover, supposing it had ever been in the hands of a carrier, it had arrived at its destination, and had passed into the actual possession, or at least had come under the absolute control, of the plaintiff; and it was in no sense on its passage to him.

If the judgment can be sustained, it must be either upon the ground of a rescission of the contract by the mutual consent of seller and purchaser, or of a reconveyance and redelivery of the goods to him, or to a third person for his use, in payment of the debt contracted by their purchase, and by way of preference in favor of the plaintiff as a creditor; and I think it can be sustained on the first of these grounds. The statement of facts is not as precise as could be desired; for it is not stated in it whether the plaintiff's clerk had or had not such a control of the business of his principal as authorized him to act upon the communication of Wing; nor what determination he came to upon the receipt of Wing's

letter; or what he said to Wing when he saw him on the 10th July. If he had the general authority of a managing clerk, in the absence of his principal, and if he immediately elected to take back the goods in pursuance of the offer of Wing, and communicated that determination to Wing, and went about securing the actual possession without unnecessary delay, I think that would be a sufficient rescinding of the sale. As the letter of Wing did not mention the place where, or the person with whom, the oil was stored, the only thing which the clerk could do was that which, in effect, he did do, namely, to see Wing, and ascertain these necessary facts. This could not be brought about in time to send to New York until after the service of the attachment. But if the clerk, with sufficient authority, consented to receive back the oil, and communicated such determination to Wing on the 10th, when he went to Falmouth, I think the sale was rescinded; and although the attachment was levied on the same day, it does not appear that it was prior to the interview with Wing. The case of *Salte* v. *Field* (5 Term, 211), and *Smith* v. *Field* (id., 402), are in point.

By the application of the rules by which we examine cases brought here upon statements of facts, I think we ought to intend that the circumstances which I have suggested as necessary to a perfect rescission existed in this case. It is incumbent on the party appealing, to show that the judgment is contrary to law; and it is not sufficient that the case is so imperfectly stated that the law applicable to it cannot be ascertained. If we applied to such cases the principles by which special verdicts are tested, scarcely a judgment which is brought before us could be sustained. In cases of special verdicts the inquiry is, whether facts enough are found to sustain the judgment. If not, it is reversed. But in such cases as the present, the question is, whether, upon the facts stated, we can adjudge that the judgment is contrary to law. Unless we come to such a conclusion, the judgment must be an affirmance. The facts which are stated in this case are perfectly consistent with those which I have considered as essential to constitute a

rescission of the sale. The clerk acted as though he had authority to accept the offer of Wing, contained in the letter; for he sent a message to New York to the plaintiff's correspondent to take possession of the oil as soon as he ascertained where it was stored. He acted throughout as though determined to accept the offered abandonment of the purchase. It is not found, in so many words, that he told Wing that he would take the property back; but it is stated that the object of his journey to Falmouth, where Wing was, was to ascertain where, that is, in what storehouse, or with what person, the oil was stored; and immediately on his return he dispatched the telegraphic message to New York to take the delivery of it for the plaintiff. The idea that the message to those correspondents was to make a seizure under the law of *stoppage in transitu* is not found in the case; and it is improbable, upon the facts which are found. It would be absurd to attempt to make a seizure under the law of *stoppage in transitu* when the goods had reached the purchaser's hands at the place of destination, and he had placed them in the hands of a third person for the use of the seller, and had given him notice to come and take them. The facts actually found being in harmony with the supposition that the clerk notified Wing that the plaintiff accepted his offer, it was the business of the defendant, if he would impeach the judgment, as being against law, to have procured a statement which should have affirmed the disputed fact to be such as he assumes it to be. For these reasons, and without examining the further questions alluded to, I am for the affirmance of the judgment of the Supreme Court.

All the judges concurred in the judgment, without indicating upon which of the opinions they based their determination.

Judgment affirmed.