## JOSHUA Y. BLANCHARD, APPELLANT, *v.* HIRAM P. TRIM AND ORLANDO K. WEEKS, RESPONDENTS.

*Contract—Parol—Delivery—Statute of Frauds—Rescission.*

An agreement to purchase back a quantity of lumber, which had been sold and delivered, but had not been paid for by the party holding the same, is a re-purchase; and, if the amount exceed fifty dollars, it must be in writing or be in part executed, to take it out of the Statute of Frauds.

C. purchased of B. a quantity of lumber, for which he gave his note payable in three months. Before the note became due, he informed B. that he could not meet the payment, and requested B. to buy back the lumber. They agreed upon the terms by parol, and B. was to take away the lumber as soon as the weather would admit. Before taking away the lumber, it was levied upon by the sheriff as the property of C. *Held,* that the title was in C., and the levy good as against B.

THIS action was commenced before a Justice of the peace in the town of Saratoga Springs, on the 21st day of February, 1857, and was for taking and carrying away lumber belonging to the Plaintiff. The defence was, that said lumber was the property of one J. H. Calkins, and as such had been levied upon by the sheriff, under execution in favor of Defendants. The Justice gave a judgment in favor of Plaintiff for $70.56. The case was appealed to the County Court, where the judgment of the Justice was affirmed. The case was then appealed to the General Term of the Supreme Court, where the judgment was reversed, and thereupon the Plaintiff appealed to this Court.

The following is a brief statement of the facts :

The Plaintiff sold and delivered to Calkins in November, 1856, a quantity of lumber, and took therefor Calkins' promissory note of $134, dated November 28, 1856, and payable at the Commercial Bank of Saratoga Springs, three months thereafter. On the 5th day of February, 1857, Calkins called on the Plaintiff, told him that he would not be able "to meet the obligation when it became due," and asked the Plaintiff to buy back the lumber. The Plaintiff went to Calkins' shop and looked at the lumber, and it was agreed between them that the Plaintiff should take it back, and should draw it away as soon as the weather would permit— Calkins agreeing to account to the Plaintiff for what had been sold or used by Calkins. The note was then in the Commercial Bank, where it had been left by the Plaintiff, and from which it was taken by the Plaintiff on the 11th day of February, 1857. On the 9th day of February, 1857, by the direction of the Defendants, and in virtue of an execution issued on a judgment recovered by them on the 7th of the same month against Calkins, the sheriff levied upon the lumber, the same not having been actually removed by Blanchard from the possession of Calkins, and sold it by virtue of the execution.

*A. Pond* for Appellant.

*J. C. Hulbert* for Respondents.

HUNT, CH.J.—The facts in this case are substantially undisputed, and the questions of law arising upon them are the only subjects for our consideration.

The lumber in question had been sold and delivered by Blanchard to Calkins, and a portion of it had been used by Calkins in his business. Finding himself unable to pay for it, he requested Blanchard to "buy it back," and upon an inspection of the lumber by Blanchard in the presence of both parties, the lumber then being before them, it was agreed between them that the lumber should be taken back by Blanchard, and that he would draw it away as soon as the weather would permit. Before the lumber was drawn away the sheriff levied upon it, by order of the De-

fendants, upon an execution against Calkins. The Respondent claims that the title to the lumber did not pass to Blanchard before the levy, for the reason that there was no actual delivery of the possession, and that the Statute of Frauds intervenes and declares such a sale void.

On the part of the Appellants it is urged that the transaction was a rescission simply of an existing sale, and that under such circumstances the title passed to the original vendor.

As a simple sale by Calkins to Blanchard on the 5th of February, it cannot be sustained under the Statute of Frauds. The delivery was not sufficient (Shindler *v.* Houston, 1 N. Y. 261; Bailey *v.* Ogden, 3 Johns 399).

Does this transaction amount simply to a rescission of the contract of sale, and are the provisions of the Statute of Frauds inapplicable to such a case? It is insisted that such is the law, and among others the case of Cummings *v.* Arnold, 3 Met. 486, is cited to sustain the claim. In that case the Judge quotes this remark from an English report hereafter cited: " It is to be observed that the statute does not say in distinct terms that all contracts or agreements concerning the sale of lands shall be in writing; all that it enacts is that no action shall be brought unless they are in writing; and there is no clause which requires the dissolution of such contracts to be in writing."

The case of Cummings *v.* Arnold simply decided that the terms of a written contract for a sale of goods might be varied by a subsequent parol contract. The written agreement was to manufacture and deliver certain cloth at a fixed price per yard on eight months' credit. An agreement was subsequently made by parol to pay cash for the goods upon a discount of five per cent. The Court held the subsequent agreement to be good. The holding was sound, and is supported by numerous authorities. The statute requires the making of the contract to be by writing, but it does not undertake to regulate its performance, nor does it say that it shall not be varied by parol. That is left to be decided by the general rules of law and evidence (3 Law Reports, Com. Law series, p. 272; Cuff *v.* Penn. Maule & S. 21; Goss *v.* Nugent, 5 B. & Ad. 58),

Thus in the present case, I doubt not that the terms of payment by Calkins and Blanchard could have been modified at the pleasure of the parties, and the original sale would have furnished a sufficient consideration for such agreement. I am of the opinion, however, that a transfer of the lumber by Calkins to Blanchard, after he had bought the lumber and held it for three months in his possession and used a portion of it in his business, does not come within this principle. It is a resale, and not a modification or a rescission of an existing contract. Where the title of the vendor has not been perfected for any reason, where there has not been a perfect delivery, where fraud has occurred, or where the contract in any respect remains executory, the idea of a rescission is quite appropriate. Where the same contract, in its essentials, is altered in its details, we at once appreciate the proposition of a modification. The contract before us does not come within either of these principles. It is a new contract simply. Being satisfied that he cannot pay for the lumber as agreed, Calkins proposes to Blanchard " to buy it back."

This language expresses the precise legal idea that the law entertains of the proceeding. Calkins, being the owner, proposes to Blanchard to sell him the lumber, and Blanchard assents to the proposition that he should buy it back. It might have been for the same price paid by Calkins or for a less or a greater price, without affecting the character of the transaction. This is essentially a new contract, and not a rescission or modification of an existing contract. Numerous cases are found in the books where the question of rescission has arisen, and in all of them that I have been able to examine, with the exception of Salte *v.* Field, 5 Term 210, it appears that the property had never been delivered to the purchaser, or had been re-delivered by the purchaser to the original vendor or his agent. It was thus an executory contract simply, or a completed sale upon the new arrangement. In some cases the question has arisen between the parties themselves, and in others the rights of creditors have intervened, but in each of them it will appear either that no original delivery had been made, or that there had been an actual re-delivery

to or for the benefit of the claimant (Sturtevant *v.* Orser, 24 N. Y. 538; Ash *v.* Putnam, 1 Hill, 302; Berly *v.* Taylor, 5 Hill, 577; Atkin *v.* Barwick, 1 Strange, 165; Salte *v.* Field, 5 D. & E. 214). In the case last cited, the goods were in the hands of the vendor's agent, from which they had never departed when the vendee assented to their return to the vendor. There was an evident desire in that case to rescue the goods from the hands of the assignees of a bankrupt, and to place them where they honestly belonged. Upon a careful examination of the cases, I am of the opinion that this case must be decided upon the language of the statute relating to contracts generally, and that there was not a sufficient delivery to make the re-sale a valid contract. See also Miller *v.* Smith, 1 Mason, 437; Chapman *v.* Searle, 3 Pick. 38.

GROVER, J.—Calkins acquired a perfect title to the lumber in question by the sale and delivery of it to him in December, 1856.

There is no conflict in the evidence as to these facts. The real question in the case is whether the Plaintiff re-acquired title from Calkins on the 5th of February, 1857, some four days prior to the levy of the execution. That this transaction was not valid as a sale of the lumber by Calkins to the Plaintiff is manifest.

Sec. 3, vol. 2, page 195, 3d ed. R. S., enacts that every contract for the sale of any goods, chattels, or things in action for the price of fifty dollars or more, shall be void unless, 1st, a note or memorandum of such contract be made in writing and be subscribed by the parties to be charged thereby; or 2d, unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action; or 3d, unless the buyer shall at the time pay some part of the purchase-money. None of these requisites were complied with, unless a delivery of the lumber and acceptance by the Plaintiff is to be implied from the fact that the parties, at the time of making the agreement, were at the place where the lumber was and saw it. But that a delivery and acceptance could not be implied from these facts was expressly determined by this Court in Shindler *v.* Houston, 1 N. Y. 261. That this case was rightly determined has never since been questioned.

It is insisted by the counsel for the Appellant, that although the bargain between the Plaintiff and Calkins, viewed as a sale, is void under the statute, yet that the same is effectual as a rescission of the contract of sale from the Plaintiff to Calkins made in December, 1856, and that by such rescission the Plaintiff was reinvested in his original title. To sustain this position several authorities are cited, the earliest of which is Atkin *v.* Barwick, 1 Strange, 165. In that case Cripp & Co. had ordered goods from the Defendants, who forwarded them pursuant to the order, and charged them in account. After the arrival of the goods, Cripp & Co., finding their affairs in a bad condition, deposited the goods with a third person for the Defendants, and afterwards wrote the Defendants, advising them of the facts. Before the receipt of the letter by the Defendants, a commission of bankruptcy was issued against Cripp & Co. Upon the receipt of the letter, the Defendants assented to the receipt of the goods in their behalf by the third person. The Court held that the title to the goods became reinvested in the Defendants upon their receipt by the third person for them, and assigned as a reason for this judgment that the contract between the Defendants and Cripp & Co. was rescinded by these acts.

Although this judgment has been much criticised in subsequent cases (Harman *v.* Fisher, 1 Cowper, 117; Neate *v.* Ball, 2 East, 116), yet the rule has been since followed (Smith *v.* Field, 5th Term, 402), and was applied by this Court in Sturtevant *v.* Orser, 24 N. Y. 538. In none of the cases, however, was there any question upon the Statute of Frauds, the goods in every instance having been actually delivered by the vendee to a third person for the vendor, the only question being as to the time when title was reacquired by such vendor, whether at the time of the delivery of the goods to the third person, or of the assent thereto by the vendor. It was held that the title vested at the time of the delivery to the third person for the vendor. These cases may well be upheld upon the principle that the subsequent ratification by the vendor of the act of the third person in receiving the goods for him made the act valid from its inception, the ratification relating back to

that time. It is a familiar principle that when one assumes as agent for another without authority, a subsequent ratification will render the act valid from its origin. The subsequent ratification, then, by the vendor of the act of the third person, in receiving the goods for him, renders such receipt the same as though the goods were received by the vendor himself; and such delivery of the goods by the purchaser to the vendor, pursuant to an agreement to take them in satisfaction of the debt for the purchase price, or any other debt, would constitute a valid sale of the goods, and the title would vest accordingly.

But in the present case there was no delivery of the lumber to the Plaintiff, or to any one for him. The contract as a contract of sale was valid by the statute. The title having wholly passed to Calkins, by the sale to him in December, he could not pass it to the Plaintiff by any act of his short of what was equivalent to a sale. Suppose, instead of giving his note, Calkins had paid cash for the lumber, and the subsequent agreement had been that the Plaintiff should take it and pay him therefor an equivalent in money. It is evident that this would have constituted a sale of the lumber from Calkins to the Plaintiff. It is none the less a sale because the Plaintiff was to pay by surrendering up the note of Calkins, whether such note was given for the original purchase price of the lumber, or anything else.

My conclusion is, that when the title has passed to a purchaser of chattels, and there are no facts giving to either party a right to rescind the contract by his own act, without the assent of the other party, any contract between them by which the title is to be passed back to the vendor is within the Statute of Frauds, the same as any other sale of the same property. It is unnecessary to inquire whether the statement upon which the judgment was entered was sufficient as against the creditors of Calkins. The Plaintiff's claim is not in that character. The judgment is clearly valid as to Calkins, and the Plaintiff has no more right to question it than Calkins.

The judgment of the Supreme Court, reversing that of the County Court and Justice in favor of the Plaintiff, must be affirm-

ed, on the ground that the Plaintiff had no title to the lumber at the time of the levy of the execution.

All affirm.

JOEL TIFFANY,
State Reporter.