JAMES SUTTON and ALLEN SUTTON, adm'rs &c., *vs.* JOSEPH
F. CROSBY.

S. sold and sent to O. a quantity of liquors, under an agreement that if O. sold
    out his hotel he might send back the unsold liquors to S.   O., after having
    sold only a small portion of the liquors, sold his hotel, and sent the balance
    of the liquors to the railroad depot, to be shipped back to S.   While they
    were still at the depot, marked and directed to S., they were seized by the
    defendant, as sheriff, upon an attachment against the property of O.  *Held*
    that even assuming that the title passed to O. on the delivery of the goods
    to him, the delivery of the liquors at the depot, for reshipment to the ven-
    dor, in pursuance of the original contract, reinvested the latter with the
    title.
*Held, also*, that the assent of the vendor to receive back the property in case
    the purchaser should sell his hotel, made the delivery of the property to the
    carrier, for the purpose of returning the same to the vendor, valid and effect-
    ual to reinvest S. with the title, as upon a resale of the liquors.
A bill of sale, containing a description of the goods sold, such as is generally
    furnished by vendors, is not conclusive as to the terms upon which the goods
    were sold.   Though *prima facie* evidence of a sale, it does not preclude the
    vendor from showing the actual facts respecting such sale.

ALFRED SUTTON, the plaintiffs' intestate, was a large
dealer in liquors at Scranton, Pennsylvania. One
Nelson Oldfield was the proprietor of a hotel at Bellona,
Yates county. In the month of February, 1865, one
Peters, the traveling agent of Sutton, in this State, was
at Bellona, and Oldfield wanted some liquors, but did not
know how much he wanted, as he talked of selling out,
and wanted a supply until he did so; it was then agreed
between Peters and Oldfield that Peters would send to
Oldfield what liquors he wanted, (Oldfield naming the
kinds and quantities,) and Oldfield was to keep track of
what he sold, and if he sold out he was to ship back to
Sutton at Scranton what was left, or sell them and take a
good note for them and send it to Sutton, and to pay for
what he had used. Peters then returned to Scranton and
the order was filled by Sutton, and the liquors were
accordingly sent—sent in pursuance of the agreement
made with Peters. Sutton, however, sent by mail a bill

Sutton *v*. Crosby.

of the liquors, using a common printed bill-head in which was printed the words, "Bought. of A. Sutton"—and the blank·just above those words was filled by the words, " Nelson Oldfield," in writing. The bill was not signed. It set forth the several items, as " 1 barrel of rye whisky, ½ barrel of whisky" &c., stating the price of each package separately. The plaintiffs claimed that at the bottom thereof was written, in substance, that " above liquors shipped in good order in pursuance of the agreement made with Peters." There was some conflict of evidence as to whether the bill of sale contained this clause or not. Oldfield did sell out on April 1st, 1865, and having sold but a small portion of the liquors, he caused the balance— the liquors in question—to be shipped back to Sutton in pursuance of the agreement with Peters. He caused the same to be taken to the depot at Penn Yan, where they were marked to " A. Sutton, Scranton, Pa.," and left in the depot of the Erie Railroad Company with directions to ship them to him, and a receipt given by the company's agent. On the next day they were seized by the defendant, who was sheriff of Yates county, upon an attachment issued against Nelson Oldfield, in an action brought by Martha A. Garlinghouse, and they were sold. For that conversion this action was brought by Alfred Sutton in his lifetime, and upon his death, pending the suit, his administrators were substituted as plaintiffs. The action was tried before Justice WELLES and a jury at the Yates circuit, in March, 1867.

The plaintiff, on resting his case, requested the court to order a verdict in his favor for the value of said liquors and the interest, $27.88, amounting in all to $230.50. To which request the defendant's counsel objected, and requested the court to submit the question to the jury whether the agreement was contained in the bill of sale. This request of the defendant was overruled by the court, and the court held that the plaintiff was entitled to recover

without respect to the question whether any thing of the kind was contained in the bill of sale, and ordered a verdict for the plaintiff for the sum of $230.50. To which decision and ruling of the court the defendant's counsel excepted. Whereupon it was ordered that there be a stay of proceedings upon the said verdict for forty days, to enable the defendant's counsel to make and serve a proposed case or bill of exceptions, and the like time be granted to the plaintiffs to propose amendments thereto, and that the said case be heard in the first instance at the general term of this court.

*Edwin Hicks,* for the appellants. I. The liquors were not received by Oldfield as a bailment, nor in any event was it a good conditional contract. The title passed to Oldfield absolutely and unconditionally. (*Ludden* v. *Hazen,* 31 *Barb.* 650.)

II. The contract was contained in the bill of sale. It was properly signed. The names of the parties sufficiently appear. (*Merritt* v. *Clason,* 12 *John.* 102. *Clason* v. *Bailey,* 14 *id.* 484. *Bonesteel* v. *Flack,* 41 *Barb.* 435.)

III. The contract was in writing, and parol evidence to vary its terms was improperly received. The ruling of the court, admitting parol evidence of the contract, was erroneous. (*Bonesteel* v. *Flack,* 41 *Barb.* 435—*more fully reported,* 27 *How.* 310.)

IV. The possession of the property by Oldfield was entirely inconsistent with the continued ownership of the vendors, and was fraudulent as against creditors. (31 *Barb.* 650. 41 *id.* 435.)

V. The delivery of the property by the judgment creditor to the carrier did not divest him of title, nor convey title to the plaintiff. (3 *Hill,* 141.) The case in 24 *N. Y. Rep.* 538 (*Sturtevant* v. *Orser*) is entirely unlike this in facts and in principle.

Sutton *v.* Crosby.

*Smith & Hill,* for the respondents. I. There is really but one question in this case. That is, is the bill of liquors which was sent by Sutton to Oldfield, by mail, a contract, under the circumstances proven in this case? We insist that it is not. 1st. It was not signed. 2d. It does not purport to be a contract. 3d. It was not intended to be one. If it is one, it became such by accident, and not by design. The circumstances surrounding the transaction show what was intended. The whole bargain was made previously with Peters. It is uncontradicted and proved by the testimony of Oldfield himself, that the liquors were sent to him in pursuance of the agreement he made with Peters, and that he returned them to Sutton in pursuance of that agreement also. The parties never for a moment thought that by the "bill of liquors" they had made a new contract. The paper lacks all the essential elements of a contract. There are no stipulations in it whatever. The only words of purchase or sale it contains are, "Nelson Oldfield bought of A. Sutton," and they are but the admission of a fact, and not an undertaking. The paper does not, by its own force, at the time it is made, vend the liquors, or assume to do so. It admits that a sale has been had, but does not effect one. We concede that the liquors were sold to Oldfield, but we insist it was a sale under certain conditions. We therefore admit all that can be claimed the paper shows, to wit, the fact of a past sale. The only case to be found in the books, which assumes to hold that such a paper constitutes a contract, is *Bonesteel* v. *Flack,* (41 *Barb.* 435.) But even in that case it is held that it can only be construed as such "when read in connection with the fact that the property was delivered under it." It therefore cannot help the defendant here, because in this case it is conceded that the liquors were not delivered under the writing, but under and in pursuance of the parol agreement with Peters. In *Allen* v. *Pink,* (4 *Mees. & Welsb.* 140,) a paper which was delivered to

Sutton *v.* Crosby.

the plaintiff when he paid the sum agreed upon for the price of a horse, viz., "Bought of G. Pink, a horse, for the sum of £7 2s. 6d., G. Pink," was held not to be the contract of the parties for the sale of the horse. But the Court of Appeals have decided this very question. They hold that such a paper containing the words "bought of" is not of itself such a writing or contract as to preclude proof by parol of the actual contract between the parties. (*Filkins* v. *Whyland*, 24 *N. Y. Rep.* 338.) 1. But the evidence of the parol agreement does not contradict the writing. The writing, at most, shows merely a sale of the liquors. It is no contradiction of it, but entirely consistent with it, that in a certain event the liquors were to be returned or purchased back. A contract may rest partly in writing and partly in parol. In all such cases parol evidence is admissible to supply the deficiency in the writing. (25 *Wend.* 417. 3 *Hill*, 171–176. 2 *Hilton*, 184.) In this case—with the exception of the fact of the admission that Oldfield had "bought" the liquors—all the facts of the transaction rested in parol. All the stipulations in reference to the time and manner of payment, and of the delivery of the goods, and the usual conditions incidental to every contract, were contained, not in the writing, but in the verbal agreement. If proved at all they must be proved by parol. 2. The parol agreement was fully executed. Admit that the goods could have been legally seized while they remained in Oldfield's possession, yet the very moment they were returned to Sutton in pursuance of the oral agreement, the title thereto reverted back to Sutton. A parol agreement fully executed by the parties thereto can always be proved. It is binding upon both parties, and justifies all acts done under it. This case differs from the one in 41 *Barb.* 435, (relied upon by the defendant,) in this: that there the goods were seized while in the landlord's possession, and here they had been surrendered back to Sutton, and were in his pos-

session when they were seized.  It will not be denied but that when the liquors were put in the depot of the Erie Railway Company, marked to Sutton, and with directions to be shipped to him, and were receipted by the company, that then Sutton virtually had the possession of the liquors. The company was then his agent, and its possession was his possession.  A delivery to the common carrier was a delivery to him.  (3 *Hill*, 141.  14 *Wend*. 546.  2 *Hill*, 137. 2 *Abb. Pr.* 282.  6 *Wend.* 401.  3 *Campb.* 524.)  They then were at Sutton's risk.  Suppose they had been burned while at the depot on the night of April 7th, 1865, whose loss would it have been ?  Clearly Sutton would have suffered the loss, because the title was in him.  Suppose they had been lost on the route, could Oldfield have maintained an action against the company ?  Or if burned at the depot, could Sutton have sued Oldfield and made him pay for the liquors thus burned ?  Most certainly not.  3. But the evidence of the actual contract made by Sutton's agent was admissible for another reason.  As stated above, the property was taken from Sutton's possession.  He thus had, *prima facie*, the title.  He had the right to show how he came by the possession, to fortify his *prima facie* title, by showing that he acquired it by virtue of an agreement between him and Oldfield which had been fully executed. Admit that there had been an absolute sale to Oldfield, it was nevertheless competent to show that Oldfield had sold back the liquors to Sutton, or that Sutton had taken them back by his consent.  This was what the evidence proved. There being no pretense of fraud about the transfer, Oldfield had the undoubted right to make a new agreement with Sutton, and to sell him back the liquors; and it could make no difference whether the selling back or taking back of the liquors was in pursuance of a new contract made at the time, or a previous one made when they were first sold.  In either case Sutton became again vested with the title.  The fact that they were actually taken

back before a seizure was made, is the important point. Besides, the evidence was admissible as part of the *res gestœ* of the whole transaction.

II. There was nothing for the jury. It is conceded by the defendant that if it was stated at the bottom of the bill of liquors that " above liquors, shipped in good order, as per agreement with Peters," then there was no defense to this action. Whether or not that was contained in the bill, was the only question which the defendant asked to be submitted to the jury. Peters, the agent, was at Scranton when the liquors were shipped, and saw the bill; he swears positively that the above statement was at the foot of the bill. Charles Lewis, another witness, who saw and read the bill at the time of its receipt, swears that it contained the above statement, or words in substance to the same effect. It is true he says, upon his cross-examination, that he had stated he did not recollect what the bill contained; but it seems upon his attention being called to the subject, and after hearing the transaction related by the other witnesses, his memory is refreshed, and he does recollect it, and swears positively about it. That he had forgotten a part that the bill contained does not in any way contradict his evidence. Then they produce the witness to whom Lewis made the admission, and he says Lewis said to him that " it appeared to him there was something, (at the bottom of the bill,) but he could not tell certain whether there was or not." We submit that here was really no contradiction. It might affect the weight to be given his evidence, but the fact was proved, nevertheless. There can be no " conflict" of evidence or " question of fact" in a case where there is no contradictory evidence about the same facts. No one disputes these witnesses. There is not a particle of evidence that the bill did not contain that statement at the bottom of it. No one swears it was not there, and two witnesses who are unimpeached and entirely worthy of credit swear

positively that it was there. Besides, all the probabilities of the case tend to prove that it was likely to be put there. A jury are not at liberty to disregard the evidence of even one unimpeached witness whose testimony is uncontradicted; and a verdict against such evidence would be set aside by the court. (1 *Cowen*, 109. 10 *How. Pr.* 528.) A new trial will not be granted for the refusal to submit certain evidence to the jury, where, if the jury had found contrary thereto, the court would be obliged to set aside the verdict as against evidence.

III. There is another ground upon which the decision can be sustained. Oldfield, it seems, about the time he sold out his tavern and returned the plaintiff's liquors, had become insolvent. According to the defendant's own showing, Oldfield had himself so declared. Ascertaining his insolvency, he returned the liquor in question to Sutton. Now even if there had been no previous agreement in reference to its return, this act of returning the liquor under those circumstances operated as a rescission of the contract of sale. The Court of Appeals have so decided. (*Sturtevant* v. *Orser*, 24 *N. Y. Rep.* 538, a case directly in point.) Of course, as decided in above case, the vendor must assent to the rescission. In this case Sutton's assent was clear enough, as he had, by his agent, previously consented and agreed to rescind and take back the goods.

*By the Court*, E. DARWIN SMITH, J. The disposition made of this case at the circuit, I think, was entirely correct.

Three witnesses, Sears, Peters and Oldfield, testified that the liquors were sold and sent to Oldfield, under an agreement that if he sold out his hotel he might send back the unsold liquors to the vendors whom the plaintiff represents. Peters says the agreement was that "if he sold out he was to ship them or sell them, and take a

good note and send it to Sutton, and that the liquors were shipped in pursuance of this agreement. Oldfield says he shipped the liquors back in pursuance of this agreement made with Peters. The liquors were sent to the railroad depot, to be sent back to Sutton, before they were seized by the defendant.

The delivery of the liquors at the depot for reshipment to the vendor reinvested him with the title to the goods, even assuming that the title passed on the delivery of the goods by Sutton to Oldfield.

There is no contradiction of the testimony of Peters and Oldfield in regard to the original contract, and it must, therefore, be assumed to be true. The redelivery was therefore in pursuance of the original contract, and clearly changed the title, within the case of *Sturtevant* v. *Orser*, (24 *N. Y. Rep.* 538.) The assent of the vendor to receive back the property in case Oldfield sold out, made such delivery valid and effectual to vest the title as upon resale of the property.

The bill of particulars which accompanied the goods from Sutton to Oldfield does not, as I can see, affect this question. It was a description of the goods, such as is generally furnished by vendors, and is not conclusive on the question upon what terms the goods were sold. It is doubtless *prima facie* evidence of a sale, but it does not preclude the vendor from showing the actual facts respecting such sale. But giving it the fullest effect, I think the election of Oldfield to return the goods not paid for, and his delivery of them to the carrier for that purpose, reinvested Sutton with title to the goods, within the case of *Sturtevant* v. *Orser*, (*supra.*)

A new trial should, therefore, be denied, and judgment given for the plaintiff.

New trial denied.

[MONROE GENERAL TERM, March 1, 1869. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]