MOSES BROWN and Others, Appellants, v. PETER BOWE, Respondent.

*Sale of personal property — when the title passes to a consignee on delivery of it to a carrier — attaching creditor cannot defend by showing title in a stranger.*

In 1880 one Day, who was engaged in carrying on business in Indiana, became so embarrassed as to be unable to continue in business. On November sixth he packed the goods sought to be recovered in this action in packages, addressed to the plaintiffs at New York, and delivered them to a railroad company, which gave him a bill of lading therefor by which it agreed to deliver the goods to the plaintiffs at New York. On November 8, 1880, Day posted a letter to the plaintiffs, which contained a bill of sale of the goods executed on November sixth, together with the bill of lading, and directed the plaintiffs to apply the value of the goods as set forth in the invoice upon his indebtedness to them. The next day Day made a general assignment. The plaintiffs received the letter on the tenth and notified the agents of the company in New York of their claim and right to the goods. On November thirteenth the goods were seized by the defendant under an attachment issued in an action brought against Day. In an action, brought by the plaintiffs to recover the possession of the goods: *Held,* that they were entitled to recover.

That even if the title acquired by the assignee was superior to that of the plaintiffs, the defendant could not set up the assignee's title as he did not claim under it.

*It seems,* that the plaintiffs' title was good even as against the assignee. (Daniels, J.)

Appeal from a judgment in favor of the defendant, entered upon a referee's report.

*F. C. Reed,* for the appellant.

*Melville H. Regensburger,* for the respondent.

Daniels, J.:

The action was brought to recover the possession of goods alleged to have been owned by the plaintiffs and unlawfully taken by the defendant from their possession. The defendant denied the plaintiffs' title to the property and the wrongful taking thereof, and then averred that the goods were taken by him as sheriff of the county of New York, under a warrant of attachment issued in favor of Raphael Bachman and others against George H. Day, directing him to attach and safely keep so much of the property of Day as would satisfy the demand mentioned in the attachment, and it was averred

that the goods were at the time of their seizure the property of Day who was the defendant named in the attachment. It appeared in the course of the trial, and the facts were so found by the referee, that Day had been engaged in business as a merchant in the State of Indiana, and had become indebted to the plaintiffs in the sum of $1,285 for goods sold and delivered by them to him. His circumstances had become such as to prevent him from continuing his business and on the 6th of November, 1880, he packed the goods in suit, and addressed them by marks on the outside of the packages, to the plaintiffs, and deposited them with the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, at Indianapolis, for the plaintiffs, and the company received such goods. The railroad company thereupon issued a bill of lading to Day, by which it acknowledged the receipt of the goods, and agreed to deliver them to the plaintiffs at the city of New York, by way of the New York Central and Hudson River Railroad Company. On the 8th day of November, 1880, Day inclosed the bill of lading with a bill of sale of the goods in a letter directed to the plaintiffs at the city of New York, and deposited the same in the post-office at Indianapolis so addressed. The invoice or bill of sale was executed on the 6th of November, 1880, and a letter accompanying the invoice and the bill of lading, informed the plaintiffs that the merchandise had been shipped for, and was intended as payment of their account against Day the consignor, and he thereby intended to transfer the goods to the plaintiffs at the prices mentioned by him in the invoice in payment of his indebtedness to them. The letter with the invoice and bill of lading was received by the plaintiffs on the 10th of November, 1880, who thereupon entered the merchandise set forth in the invoice as stock on hand to arrive, and repeatedly called at the office of the New York Central and Hudson River Railroad Company to obtain the goods, and informed the company's agents of their claim and right thereto. After that, and on the 13th day of November, 1880, the attachment was issued under which these goods were seized and taken from the railway company by the defendant. It was also proved that, on the day following the mailing of the bill of lading and invoice to the plaintiffs, Day made a general assignment for the benefit of his creditors, and upon this state of facts the referee concluded that the plaintiffs were not

entitled to maintain the action, and directed judgment in favor of the defendants.

But by the delivery of the goods to the railway company to be carried and delivered to the plaintiffs, and the taking of the bill of lading for their benefit by Day, and mailing it to them with the invoice or bill of sale, the company became the bailee of the goods for the plaintiffs' use and benefit. The intention of Day was thereby to transfer to and vest in the plaintiffs the title to the goods; and when he placed them in the possession of the railway company, to carry that intention into effect, and mailed the invoice and bill of lading to the plaintiffs, his right to and authority over the property were for the time being at an end, and the title vested in the plaintiffs, subject only to their refusal to accept the consignment when the facts came to their knowledge. A point quite similar in its legal effect to this was considered in *Walley* v. *Montgomery* (3 East, 585), where great stress was placed upon the invoice as a document, which would, with the other attendant circumstances, transfer the title to the property shipped to the consignee. The facts of that case so nearly resemble the one now before the court as to render it a very substantial authority in the way of sustaining the plaintiffs' title to the property, upon what transpired up to and including the mailing of the letter, with the invoice and bill of lading by Day to them. And a similar principle seems to have been followed in *Anderson* v. *Clark* (2 Bing., 20). Under circumstances not materially dissimilar, the point was likewise considered in *Sturtevant* v. *Orser* (24 N. Y., 538). In that case the goods, which were the subject of the action, had been sold and delivered by the plaintiffs and received by their vendee. The complete title to the property had consequently vested in him; and after retaining them in his possession for a considerable period of time, during which he was their legal owner, he discovered the fact that he was in an insolvent condition and thereupon deposited the goods with a third person for the benefit of the plaintiffs; and they were held entitled to recover them in preference to a party afterwards seizing them before any actual acceptance of the goods took place on the part of the plaintiffs. The fact distinguishing that case from the one now before the court is, that the goods which were then in controversy were the identical goods sold by the plaintiffs them-

selves. But it should not be allowed to produce any legal distinction between that and the present case, for the reason that the title to them had become as completely vested in the vendee as had the title in Day to the goods in controversy in this action. They were his property, as much so as the goods now in suit, at the time when they were put up and deposited for the benefit of the plaintiffs. And the principle upon which the title of the plaintiffs could be there maintained would seem to be as applicable and controlling in the present case as it was there held to be. But it is not requisite to go as far as this for the disposition of this case. For before the attaching creditor, in whose behalf the defendant acted, took any proceeding for the collection of their debt the plaintiffs had received information of what had transpired in the shipment of the goods to them, and the forwarding of the bill of lading and invoice, and had actually accepted and assented to what Day had done to transfer the title to them. From that time they became the complete and absolute owners of the property, as against attachments afterwards issued in behalf of any of Day's creditors. That was the case as it was presented to the referee; and upon that state of facts no reason appears to exist for doubting that the plaintiffs had acquired the title to the goods before the issuing of, or their seizure under, the attachment; and that upon such acceptance the delivery to the carrier became a delivery to the plaintiffs. Even within the case of *Rodgers* v. *Phillips* (40 N. Y., 519), which depended upon the effect to be given to the statute of frauds, the title was vested in the plaintiffs before the goods were seized by the defendant.

He did not proceed under the authority of the assignment and is not entitled to claim any benefit from its execution and delivery. At the time when he seized the property it was in the possession of the railway company as the bailee of the plaintiffs, and through their title they were in the constructive possession. His seizure and removal of the goods were wrongful, and as he proceeded under a distinct and independent authority, and not under the assignment, he cannot rely upon that instrument for the purpose of protecting himself against liability to the plaintiffs in this action. This point, where the action is brought to recover for the unlawful or wrongful taking from the possession of the plaintiff, was considered in *Stowell*

v. *Otis* (71 N. Y., 36), and it was held by the court that title out of the plaintiffs, and in another party, could neither be relied upon or proved by way of defense to the action. But even if it could, still under the authorities first referred to, the plaintiffs would seem to have a superior title to the goods over the assignee himself claiming them under the general assignment executed after they had been deposited with the railway company and the bill of lading and invoice had been mailed to the plaintiffs, intending thereby to vest them with the title to the goods. The act was one which was for their benefit, and their assent to what Day had done in their behalf is to be presumed, until, as a matter of fact, it should appear to have been declined. No indisposition to receive the goods on the terms proposed by Day was ever manifested by the plaintiffs, and the title which had for the time being vested in them, under their deposit with the carrier, and the mailing of the bill of lading and invoice finally became absolute and complete, and protected the goods against their seizure by the defendant in this action.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and DANIELS, J.

Judgment reversed, new trial ordered, costs to abide event.