## SHINDLER *vs.* HOUSTON.

Plaintiff and defendant bargained respecting the sale, by the former to the latter, of a quantity of lumber, piled apart from other lumber, on a dock and in view of the parties at the time of the bargain, and which had before that time been measured and inspected.  The parties having agreed as to the price, the plaintiff said to the defendant, "*the lumber is yours.*"  The defendant then told the plaintiff to get the Inspector's bill, and take it to one House, who would pay the amount.  This was done the next day, but payment was refused.  The price was over fifty dollars.  *Held*, in an action to recover the price, that there was no delivery and acceptance of the lumber, within the meaning of the statute of frauds, and that the sale was therefore void.

It seems that to constitute a delivery and acceptance of goods, such as the statute requires, something more than mere words is necessary.  Superadded to the language of the contract, there must be some *act* of the parties, amounting to a transfer of the *possession*, and an acceptance thereof by the buyer.  The case of cumbrous articles is not an exception to this rule.

On error from the Supreme Court.  Houston sued Shindler in the Justices' Court, of the city of Troy, in assumpsit, for the price of a quantity of lumber.  The plaintiff having recovered, the defendant appealed to the Mayor's Court of that city, and on the trial in that Court, the case was this :— The plaintiff was the owner of about 2070 feet of curled maple plank and scantling, which he had brought to Troy in a boat, and which, after being inspected and measured, was piled on the dock apart from any other lumber.  Soon after this, the plaintiff and defendant met at the place where the

lumber lay. The plaintiff said to the defendant, "what will you give for the plank?" The defendant said he would give three cents a foot. The plaintiff then asked, "what will you give for the scantling?" The defendant replied, one and a half cents a foot. The plaintiff then said, "the lumber is yours." The defendant then told the plaintiff to get the Inspector's bill of it, and carry it to Mr. House, who would pay it. The next day the plaintiff, having procured the Inspector's bill, presented it to House, who refused to pay it, on the ground that the instructions he had received from the defendant did not correspond with the plaintiff's statement of the contract. There was no note or memorandum of the contract in writing, nor was there any evidence of a delivery or acceptance of the lumber, except as above stated. At the prices agreed on, the lumber came to $52 51, no part of which was ever paid. The Mayor's Court instructed the jury that if they were satisfied that it was the intention of the parties to consider the lumber delivered at the time of the bargain, and that nothing further was agreed or contemplated to be done, in order to change the title in, or possession of the lumber, the plaintiff was entitled to recover; that the sale was not within the statute of frauds, and did not require any note or memorandum in writing, provided they should find from the evidence, that there was a delivery and acceptance of the lumber at the time of the bargain. The defendant excepted and the jury found a verdict for the plaintiff, on which judgment was rendered in his favor. The Supreme Court, on writ of error to the Mayor's Court, affirmed the judgment, (*See* 1 *Denio*, 48) and the defendant brings error to this Court.

*N. Hill, jr.*, for plaintiff in error, insisted, that the sale was within the statute of frauds requiring a note in writing. There was no acceptance or receipt of the lumber by the vendee within the intent and meaning of the statute. To take the case out of the statute there must be something more than would be sufficient to change the property at common

law—something more than would be sufficient to constitute a delivery at common law. There should be, (1) a bargain intended to change the right of property. This is the act of both parties. (2) a delivery of the property and the *actual possession* to the vendee, *discharged of all lien* for the purchase money. This is the act of the seller. (3) An acceptance and receipt of the entire property, and *actual possession* of some part of the goods, as absolute owner, discharged of all lien. These are the acts of the buyer. There was nothing proved in this case but the *bargain*. (3 *Bos. and Puller*, 233; 6 *Barn. and Cress.* 351; *Ch. on Cont.* 389, 390; 3 *Dowl. and Ryl.* 220, 822; 2 *Barn. and Cress.* 37; 3 *Johns.* 399; 10 *Bing.* 101, 376; 5 *Barn. and Cress.* 857, 5; 3 *Barn. and Ald.*, 321, 680; 5 *Do.*, 559; 4 *Mees. and W.*, 155; 1 *Dowl. and Ryl.* 128; 22 *Wend.* 659; 1 *Carr. and Payne*, 272; 3 *Barn. and Cress.* 1; 2 *Carr. and Payne*, 532; 4 *Maule and Sel.* 262; 9 *Barn. and Cress.* 591; 7 *T. Rep*, 15, 17; 1 *C. and M.*, 333; 6 *Wend.*, 400; 11 *Johns.*, 284.)

*J. A. Spencer and D. Willard*, for defendant in error, cited, *Bates* v. *Conklin*, 10 *Wend.* 389; *Chaplain* v. *Rogers*, 1 *East*, 192; *Jewett* v. *Warren*, 12 *Mass.* 300; 2 *Kent. Comm.* 500, 501, 4th *Ed.*

GARDINER, J. As no part of the purchase money was paid by the vendee, the contract above stated was void by the statute of Frauds, (2 *R. S.* 136, § 3, *subd.* 3) unless the buyer "accepted and received" the whole or a part of the property sold.

The object of the statute was not only to guard against the dishonesty of parties and the perjury of witnesses, but against the misunderstanding and mistakes of honest men. If the contract is reduced to writing, and "subscribed by the parties to be charged thereby," this object is effectually attained. The writing becomes its own interpreter. Where this is omitted but the vendee has paid part of the price, or the vendor has delivered and the buyer has accepted a portion

or all of the property, upon the strength of the agreement. These acts not only indicate deliberation and confidence upon the part of the contractors, but they furnished unequivocal evidence of the existence of a contract of some sort between them, although its terms and provisions must after all depend upon the recollection of witnesses.

The case before us is destitute of all such collateral evidence. No acts of the party sought to be charged are proved. We are presented with a naked verbal agreement. The declarations relied upon as evidence, of a delivery and acceptance constitute a *part* of the *contract*, and of course are obnoxious to all the evils and every objection against which it was the policy of the law to provide.

The acts of part payment, of delivery and acceptance mentioned in the statute are something over and beyond the agreement of which they are a part performance, and which they assume as already existing. The entire absence of such evidence distinguishes the present case from all those that have been cited by the counsel for the plaintiff in support of this action. (*Chaplain* vs. *Rogers*, 1 *East*, 193 ; *Jewett* vs. *Warren*, 12 *Mass.* 311 ; *Riddle* vs. *Varnum*, 20 *Pick*, 280 ; 10 *Wend.*, 391 ; *Kent· Com.*, 4th *Ed.* 500, .501.) The strong case, from the Pandects of the Column of Granite is not an exception ; for it is fairly to be inferred that the consent of the vendor that the purchaser should take possession was subsequent to the sale.

I am aware that there are cases in which it has been adjudged, that where the articles sold are ponderous, a symbolical or constructive delivery will be equivalent in its legal effect to an actual delivery. The delivery of a key of a warehouse in which goods sold are deposited, furnishes an example of this kind. But to aid the plaintiff, an authority must be shown that a *stipulation in the contract of the sale*, for the delivery of the key or other indicia of possession will constitute a delivery and acceptance within the statute. No such case can be found. The entire contract being void by the statute, the stipulation in reference to a constructive delivery would

fall with the other provisions. In *Philips* vs. *Bristol*, (2 *B. and C.* 511,) the property was sold by an auctioneer and delivered to the purchaser, who after detaining it three or four minutes handed it back saying he was mistaken as to the price. The vendor refused to receive the property, and the jury found that the excuse was false in fact. The verdict was set aside : The Court saying that to satisfy the statute there must be a delivery by the vendor, with an intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with the intent of taking possession as owner.

This, I apprehend, is the correct rule and it is obvious, that it can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intentions of the parties. Mere words are not sufficient. (3 *Johns.* 421.) Declarations accompanying an act and explanatory of it are undoubtedly admissible evidence, as a part of the *res gestae*. This is all that is established by the modern authorities. (12 *Mass.*, 301 ; 1 *Dallas*, 171 ; 2 *Barn. and Cress.* 44 ; 3 *J. R.* 421).

In a word the statute of fraudulent conveyances and con tracts, pronounced this agreement when made, void, unless the buyer should "accept and receive some part of the goods."

The language is unequivocal and demands the action of both parties, for acceptance implies delivery, and there can be no complete delivery without acceptance. The defendant, however, said nothing and did nothing subsequent to the agreement except through his agent to repudiate the contract. There was consequently no evidence of a delivery.

I think, therefore, the learned Recorder erred in submitting that question to the jury, and that the judgment of the Supreme Court should be reversed.

The Statute of Frauds has been pronounced by high authority, (*Kent's Comm.* 2 *V.*, 494) to be, in many respects, the most comprehensive, salutary, and important legislative regulation on record, affecting the security of private rights. Its benefits it is believed will be most effectually secured, by

Shindler *v.* Houston.

*rejecting* refined distinctions, overlooking the supposed equity of particular cases, and adhering steadily to its language as the best exponent of the intention of the Legislature.

BRONSON, J.   On a review, and a more full consideration of the case, I am satisfied that I was in an error in assenting to the judgment which was rendered by the Supreme Court. If we assume that the sale was in all other respects complete, the difficulty still remains that there was no delivery of the goods.   Nothing was done.   As was very justly remarked by the defendant's counsel, there was nothing but mere *words ;* and the statute plainly requires something more ; it calls for *acts.* (*Per Cowen, J., in Archer* vs. *Zeh,* 5 *Hill* 205.)   A writing must be made, part of the purchase money must be paid, or the buyer must accept and receive part of the goods. Mere words of contract, unaccompanied by any act, cannot amount to a delivery.   To hold otherwise would be repealing the statute.

There may be a delivery without handling the property, or changing its position.   But that is only where the seller does an act by which he relinquishes his dominion over the property, and puts it in the power of the buyer ; as by delivering the key of the warehouse in which the goods are deposited, or directing a bailee of the goods to deliver them to the buyer, with the assent of the bailee to hold the property for the new owner.   In such case there is, in addition to the words of bargain, an act by which the dominion over the goods is transferred from the seller to the buyer.   Here there was no delivery either actual or symbolical.

I shall not review the cases on this subject further than to notice those supposed to favor the plaintiff.   In *Chaplin* vs. *Rogers,* (1 *East.* 192,) the buyer had re-sold the property, and his vendee had carried it away.   The Court held that there was sufficient evidence to carry the cause to the jury on the question of delivery to and acceptance by the first purchaser. *Bates* vs *Conkling,* (10 *Wend.* 389,) was a writ of error, and the question of delivery did not arise, because, as the Chief

Justice remarked, the point was not made in the Court below, where it might have been obviated by testimony. It was also suggested at the bar, in answer to this case, that the question arose upon a contract for work and labor, rather than a contract of sale. But it would be difficult to maintain that doctrine. (*Downs* vs. *Ross*, 23 *Wend.* 270.) It is enough, however, that what was said in *Bates* vs. *Conkling*, about the delivery of cumbersome articles, was but a *dictum*, and not upon the point in judgment. In *Jewett* vs. *Warren*, (12 *Mass.* 300,) where logs in a boom were sold, there was a bill of parcels; and no question upon the statute of frauds either was or could be made. The question was, whether there had been a sufficient delivery to constitute the logs a valid pledge. We have not been referred to any modern case, nor have I met with any which will uphold this judgment.

It is undoubtedly true, that it will not always be easy to make an actual delivery of bulky and ponderous articles. But there are other ways of satisfying the statute of frauds. The parties may put their agreement in writing, or the buyer may pay the whole or some part of the purchase money.

I am of opinion that the judgments of the Supreme Court and the Mayor's Court should be reversed, and a *venire de novo* be awarded.

WRIGHT, J. There being no note or memorandum made in writing, of the contract or earnest paid, this is a case within the statute of frauds, unless there was an acceptance and receipt of the whole or a part of the property by the buyer. (2 *R. S.* 136, § 3.) If there was an acceptance shewn sufficient to take the case out of the operation of the statute, it was of all the lumber, as it is not pretended that the entire property vested in the vendee by the acceptance and receipt of a part thereof. The question, therefore, for consideration upon the facts proved, is whether there was an acceptance and receipt of the lumber by Shindler, the vendee, within the intent and meaning of the statute.

It is to be regretted that the plain meaning of the statute

should ever have been departed from, and that any thing short of an actual delivery and acceptance should have been regarded as satisfying its requirements, when the memorandum was omitted; but another rule of interpretation which admits of a constructive or symbolical delivery has become too firmly established' now to be shaken. The uniform doctrine of the cases, however, has been, that in order to satisfy the statute there must be something more than mere words—that the act of *accepting* and *receiving* required to dispense with a note in writing, implies more than a simple act of the mind, unless the decision in *Elmore* vs. *Stone* (1 *Taunton*, 458) is an exception. This case, however, will be found upon examination to be in accordance with other cases, although the acts and circumstances relied upon to shew a delivery and acceptance, were extremely slight and equivocal; and hence the case was doubted in *Howe* vs. *Palmer*, (3 *Barn. and Ald.* 324) and *Proctor* vs. *Jones*, (2 *Carr. and Payne*, 534) and has been virtually overruled by subsequent decisions. Far as the doctrine of constructive delivery has been sometimes carried, I have been unable to find any case, that comes up to dispensing with all acts of parties, and rests wholly upon the memory of witnesses as to the *precise form of words* to shew a delivery and receipt of the goods. The learned author of the Commentaries on American Law, cites from the Pandects the doctrine that the consent of the party upon the spot is sufficient possession of a column of granite, which by its weight and magnitude, was not susceptible of any other delivery. But so far as this citation may be in opposition to the general current of decisions in the Common Law Courts of England and of this country, it is sufficient perhaps to observe that the Roman law has nothing in it analagous to our statue of frauds. In *Elmore* vs. *Stone*, expense was incurred by direction of the buyer, and the vendor, at his suggestion, removed the horses out of his sale stable into another, and kept them at livery for him. In *Chaplin* vs. *Rogers* (1 *East* 192) to which we were referred on the argument, the buyer sold part of the hay, which the purchaser had taken away ; thus dealing with it as if it were

Shindler *v.* Houston.

in his actual possession. In the case of *Jewett* vs. *Warren* (12 *Mass. R.* 300) to which we were also referred, no question of delivery under the statute of frauds arose. The sale was not an absolute one, but a pledge of the property. The cases of *Elmore* vs. *Stone* and *Chaplin* vs. *Rogers* are the most barren of acts indicating delivery, but these are not authority for the doctrine that words, *unaccompanied by acts* of the parties, are sufficient to satisfy the statute. Indeed, if any case could be shown which proceeds to that extent, and this Court should be inclined to follow it, for all beneficial purposes, the law might as well be stricken from our statute book; for it was this species of evidence, so vague and unsatisfactory, and so fruitful of frauds and perjuries, that the Legislature aimed to repudiate. So far as I have been able to look into the numerous cases that have arisen under the statute, the controlling principle to be deduced from them is, that when the memorandum is dispensed with, the statute is not satisfied with any thing but unequivocal acts of the parties; not mere words that are liable to be misunderstood and misconstrued, and dwell only in the imperfect memory of witnesses. The question has been, not whether the words used were sufficiently strong to express the intent of the parties, but whether the acts connected with them, both of seller and buyer, were equivocal or unequivocal. The best considered cases hold that there must be a vesting of the possession of the goods in the vendee, as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee, so unequivocal that he shall have precluded himself from taking any objection to the quantum or quality of the goods sold. (*Chitty on Contracts* 390, *and cases cited; Hilliard, on Sales* 135, *and cases cited;* 10 *Bing.* 102, 384.) But will proof of words alone shew a delivery and acceptance from which consequences like these may be reasonably inferred? Especially, if those words relate not to the question of delivery and acceptance, but to the contract itself? A. and B. verbally contract for the sale of chattels, for ready money; and with-

out the payment of any part thereof, A. says " I deliver the property to you," or " It is yours," but there are no acts shewing a change of possession, or from which the fact may be inferred. B. refuses payment. Is the right of the vendor to retain possession as a lien for the price gone ? Or, in the event of a subsequent discovery of a defect in the quantum or quality of the goods, has B. in the absence of all acts on his part shewing an ultimate acceptance of the possession concluded himself from taking any objection ? I think not. As Justice Cowen remarks in the case of *Archer* vs. *Zeh* (5 *Hill*, 205). " One object of the statute was to prevent perjury. The method taken was to have something done; not to rest every thing on mere oral agreement." The acts of the parties must be of such a character as to unequivocally place the property within the power, and under the exclusive dominion of the buyer. This is the doctrine of those cases that have carried the principle of constructive delivery to the utmost limit. Thus, in *Searles* vs. *Keeves* (2 *Esp. R.* 598) a case which arose at a period when the English Courts were more inclined than recently to allow of a constructive delivery and acceptance, where a written order was given by the seller of goods to the buyer, directing the person in whose care the goods were to deliver them, which order was presented by the buyer, it was held that there was a sufficient delivery within the statute. So, also, in *Hollingsworth* vs. *Napier* (3 *Caines R.* 182) where the vendor delivered to his vendee a bill of parcels for goods lying in a public store, together with an order on the store keeper for their delivery, and the vendee, upon delivering the order demanded the goods, which were turned out to him, and he paid the amount of the storage, marked the bales with his initials, and returned them to the custody of the store keeper, it was held that the statute was satisfied. But in cases like these, it would seem now to be necessary, that the party having the custody of the goods, and who is the agent of the vendor, should recognize the order given to the purchaser, and assent to retain the goods for him. A delivery to the vendee of the key of the warehouse in which the

goods are lodged, or other *indicia* of property, where goods are ponderous and incapable of being handed over from one to another, was said by Lord Kenyon, in *Chaplin* vs. *Rogers* (1 *East* 194) to be tantamount to an actual delivery. In *Dodsley* vs. *Varley* (12 *Adol. & Ellis*, 632) which was an action of assumpsit for wool bargained and sold, the Court said, " We think that upon the evidence, the place to which the wool was removed may be considered as the defendant's warehouse, and that he was in *actual possession* of it as soon as it was weighed and packed." In these cases, and in a large number of others that might be cited, the circumstances were unequivocal to shew, not merely a delivery to and acceptance of the *property* in the goods, but, what is always essential, a complete acceptance of the *possession*, by the buyer. The facts were more or less strong in the several cases, but the acts of the parties can scarcely be reconciled with any other presumption.

On the other hand, where the acts of the buyer are equivocal, and do not lead irresistibly to the conclusion that there has been a transfer and acceptance of the possession, the cases qualify the inference to be drawn from them, and hold the contract to be within the statute. In *Baldy* vs. *Parker*, (2 *B. and C.* 37) A. purchased of B.; a trader, several articles, amounting in the whole to £70. A. marked with a pencil some of the articles, saw others marked, and helped to cut off others. He then requested that a bill of the goods might be sent to him, which was done, together with the goods, but he declined to accept them. It was held that there was no delivery and acceptance to take the case out of the statute ; and Lord C. J. Abbott, in speaking of the exception in the statute, justly remarked that, " It would be difficult to find words more distinctly denoting an actual transfer of the article from the seller, and an actual taking possession of it by the buyer." In *Carter* vs. *Touissant*, (5 *B. and Ald.* 855,) the circumstances were, that a horse was sold by verbal contract, but no time fixed for the payment of the price. The horse was to remain with the vendor for twenty days, without charge to the

vendee. At the expiration of that time he was sent to grass by order of the vendee, and entered as one of the vendor's horses. The Court held that there was no acceptance of the horse by the vendee within the meaning of the statute. In *Tempest* vs. *Fitzgerald*, (3 *Barn. and Ald.* 680,) A. agreed to purchase a horse from B. for cash, and take him away within a certain time. About the expiration of that time A rode the horse, and gave directions as to his treatment, &c., but requested that he might remain in the possession of B for a further time, at the expiration of which time he promised to take and pay for the horse, to which B. assented. The horse died before A. paid the price or took it away. It was held that there was no sufficient acceptance of the horse to render the vendee liable for the price. In *Howe* vs. *Palmer*, (3 *B. and Al.* 321,) a vendee publicly agreed at a public market, with the agent of the vendor, to purchase twelve bushels of tares, (then in the vendor's possession constituting part of a larger quantity in bulk,) to remain in the vendor's possession until called for. The agent, on his return home, measured and set apart the twelve bushels. It was held that in this case there had been no acceptance, and the action would not lie. In *Kent* vs. *Huskisson*, (3 *B. and P.* 233,) A. verbally ordered from B. a bale of sponge, which was sent. The bale was opened and examined, and the sponge returned by B., who at the same time wrote a letter to A., stating that he disapproved thereof. It was held that B. had not accepted the goods. In *Proctor* vs. *Jones*, (2 *Car. and P.* 532,) it was said that the marking of casks of wine, sold by parol, and lying at the London docks, with the initials of the purchaser, at his request and in his presence, was not a sufficient acceptance within the statute, at least if the time of payment had not, when the casks were so marked, been fixed. In *Bailey* vs. *Ogden*, (3 *John R.* 399,) an agreement with the vendor, on a parol contract for the sale of goods, about the storage of the goods, and the delivery by him of the *export entry* to the agent of the vendor, were held not to be sufficiently certain to amount to a constructive delivery, or to afford an *indicium* of ownership. Other com-

Shindler v. Houston.

paratively recent English and American cases might be cited shewing, as has been said by Mr. Justice Coleridge, that "the tenor of modern decisions is to give to the words of the statute their fullest effect, and not to allow (so far as it is possible) of any constructive deliveries and acceptances."

I think I may affirm with safety that the doctrine is now clearly settled, that there must not only be a delivery by the seller, but an ultimate acceptance of the possession of the goods by the buyer, and that this delivery and acceptance can only be evinced by unequivocal acts independent of the proof of the contract. But if the principles to be deduced from the recent decisions were otherwise, I should not be disposed, in the face of the plain and obvious meaning of the statute, to follow them. The statute of frauds of 29 Car. 2, (and it is in substance re-enacted in this State,) was justly pronounced, nearly half a century since, by an eminent British Judge, "one of the wisest laws in the statute book." Its provisions apply with singular wisdom and beneficence, "to the daily contracts and practical affairs of mankind," relieving them of vagueness and uncertainty, and checking, to some extent, "the restless and reckless spirit of litigation." Whilst this meritorious law is in the statute book, it is our business to enforce it in good faith, and according to its plain letter and spirit, without studying to fritter away its vitality in the attempt to uphold contracts which by its provisions are clearly void.

I am of the opinion that the **judgment** of the Supreme Court should be reversed.

RUGGLES, JONES, and JOHNSON, Js., concurred.

JEWETT, CH. J., and GRAY, J., delivered opinions in **favor** of affirming the judgment.

Judgment reversed.