FREDERICK BROTHERS ARTISTS CORPORATION et al., Plaintiffs, v. CHARLES V. YATES, Defendant.

Supreme Court, Special Term, New York County, March 9, 1946.

*Richard Swan Buell, John J. Boyle* and *Donald M. Marshman* for plaintiffs.

*Jack J. Katz* for defendant.

EDER, J. The plaintiffs seek to enjoin and restrain the defendant from performing or rendering his personal services for anyone other than the plaintiffs pursuant to the terms of the agreements between the parties for the unexpired period thereof claiming his services are unique and cannot be replaced.

A review of the cases indicates that equity proceeds with some reluctance to enforce covenants of this kind since they savor of involuntary servitude. Thus, equity has confined its injunctive powers to those instances where the services of the defendant are shown, as applied to the particular case, to be what has been characterized as unique, extraordinary, unusual, and, as sometimes expressed, irreplaceable. Other equivalents are where the services are of a character specially skillful and individualistic, exceptional or of special value to the employer (*Comstock* v. *Lopokowa*, 190 F. 599; *Shubert Theatrical Co.* v. *Rath*, 271 F. 827; *Winter Garden Co.* v. *Smith*, 282 F. 166; *Associated Newspapers* v. *Phillips*, 294 F. 845).

These are elements to be weighed in making the ultimate decision, not solely, but are to be considered along with principles of equity which have been held to be applicable; for example, whether, in the circumstances, it would be inequitable

to grant such drastic relief though there be a deliberate breach of contract by the defendant; and in that connection equity has, at times, declined to interfere where the agreement lacks mutuality. But there are exceptions (*McCall Co.* v. *Wright,* 198 N. Y. 143, 153).

A person who, as in the case at bar, has deliberately breached a contract, is hardly to be received in equity on the same plane as one who has fully performed it; prima facie, the former is regarded with suspicion; it may be that subsequent developments may tend to explain or even excuse the failure by him to observe the commitments to which he has solemnly obligated himself and to eventually exonerate him; but, in the first instance, he is viewed with distrust.

The plaintiffs, in the case at bar, I find as a fact, have fulfilled the terms of the agreements on their part to be performed. The defendant has, in breach and violation of the agreements, aligned himself with a rival concern, which engaged his services with knowledge of his contracts with the plaintiffs, and both are engaged in competing with the plaintiffs.

Under the agreements the defendant receives from the plaintiffs a very substantial compensation in the form of salary and a share of the profits; he now receives from plaintiffs' competitor a very substantial remuneration and will receive increasing emoluments.

As a primary proposition the plaintiffs, in the mentioned situation, should have the redress sought, unless by virtue of governing and decisive considerations the court is compelled to refuse it.

As might be expected in cases of this sort, the defendant, with much emphasis, asserts his services are but commonplace, albeit, in the basic contract no such modesty by him is displayed; he avows, by unequivocal convenant, that " his abilities and capabilities are unique "; the plaintiffs, too, in said contract, acknowledge such are his possessions.

While these declarations are, to a degree, self-serving and conclusory, and are not definitely controlling, they are, nevertheless, to be awarded a fair measure of solid recognition, since the parties so understood and the fixation of defendant's large and substantial compensation is predicated on this factor as a basic, fundamental and high, if not all-important, element.

One may fairly suppose, I think, and with reasonable safety, that if the plaintiffs had attempted to disparage the defendant's services, abilities and capabilities and to dispense with them as commonplace and ordinary, he would have asserted, with much

vehemence, the plaintiffs should be held to their own unqualified declaration that the converse is the fact. It would seem that the rule, equitably, ought to work both ways.

Be that as it may, I am of the opinion that the nature of the defendant's services are such as to bring them within the ambit of " unique ", " unusual ", " exceptional ", " of special value ".

" Unique " is a term not capable of exact or precise definition; it depends upon the circumstances and conditions in which it is applied. In one instance, as pertaining to services, it may mean ability and capability of unparalleled character; in another, as indicating one who is specially skillful and individualistic; again, it may mean one possessed of unusual personality; also, as being one possessed of valuable personal contacts in the form of means of approach to key men in a particular industry. When the term is used the background which called it forth must be considered.

In my opinion the evidence abundantly attests the fact that the defendant is possessed of an unusual personality which has won him a large personal following of performers in the theatrical and entertainment field and that he enjoys their full and complete confidence as a result of the excellent standing and reputation which he enjoys as an adviser and consultant and because of his special ability to obtain lucrative engagements for them, both as well-known and unknown persons in that field, and that they will not perform for others except through the defendant, and because of the personal contacts which he enjoys with key men.

The evidence establishes that in his vocation the defendant is specially skillful and individualistic and that these qualities render his services to the plaintiffs of special value; that the parties so regarded them and that they were the basic and inducing causes for the contracts; that each of the contracting principals regarded these qualities of the defendant as exceptional. That they are of that standard is evidenced by the terms of the defendant's contract with the plaintiffs as well as by the terms of his contract with the plaintiffs' competitor.

The matter is to be considered in the light of reality, divorced from a perspective of fine, hairline distinctions, if justice is to be done.

I apprehend it to be the defendant's position that, assuming his services are unique and exceptional, yet he is not irreplaceable and therefore the plaintiffs are not entitled to the injunction sought. I am unimpressed with this premise, since, in

the true sense, as respects an individual, irreplaceability may be said to exist only in family life, as in the case of the loss of a member of the family. But, in the business world, in the field of science, the arts and literature, as in administrative and governmental affairs, no one is irreplaceable or indispensable; a capable and efficient substitute or successor may always be found. This is a matter of common knowledge, an irrefragable fact since the dawn of civilization.

With respect to personality, it is an individual quality and possession. Like friendship, it rests upon individuality. It is " That quality or assemblage of qualities which makes a person what he is, as distinct from other persons " (Oxford Dictionary); it is magnetic personal charm (Webster Dictionary). " Personality is individuality existing in itself " (Coleridge). It is a personal trait, incapable of transfer, and follows the person. It is, in that sense, irreplaceable.

The personality of a particular individual may create an emotional response in another which will not have that effect in the case of a different person; such personality and emotional response may be reflected in ability to obtain approach, audiences, preference and favorable consideration, through establishing friendships and valuable and lasting business and social contacts which another cannot secure.

The associations, friendships and contacts thus gained may, and frequently do, enable such an individual to render services which are, and may, in particular circumstances, be regarded as unique and exceptional, and as possessing special value. That is precisely the situation here as disclosed by the evidence and it constituted the impelling, motivating cause for the defendant's employment by plaintiffs, as the parties well and clearly understood. Indeed, the plaintiffs are ready and willing to have the defendant return and continue in their employ pursuant to the terms of their agreements with him.

The defendant is not the ordinary or run of the mill booking agent, as he would have the court believe, but possesses unusual and extraordinary skill and individuality.

Defendant's witnesses, in a manifest endeavor to aid him sought to place him in the class of just a very good booking agent as distinguished from an extraordinary and very unusual one. The effort must prove fruitless. " We hardly need expert testimony to inform us that what one of the witnesses called ' personality ' is what counts." (*Winter Garden Co.* v. *Smith*, 282 F. 166, 170, *supra;* see, also, *Comstock* v. *Lopokowa*, 190 F. 599, *supra*.)

I reject their testimony because it is apparent to me from their manner of testifying and their demeanor on the witness stand that they were so testifying not because they believed the opinions they expressed to be the fact, but because they were so given to aid the defendant in his contention that his services were ordinary and could be readily replaced. In this regard I credit the evidence adduced by the plaintiffs.

The next feature to be considered is the contention of the defendant that the agreements lack mutuality in that they contain provisions entitling the plaintiffs to terminate the agreements on notice during any year of the term thereof and that the defendant has no such similar right.

In *McCall Co.* v. *Wright* (198 N. Y. 143, 153–154, *supra*) the court, in that connection, said: " But so far as I am aware, a court of equity does not refuse under otherwise proper circumstances to restrain a continuing violation of a valid subsisting obligation not to injure another, simply because that other has the option to cancel the obligation by terminating the agreement which creates it. It seems to me that no element of mutual obligation is involved. One party has furnished a good consideration for which the other has agreed to refrain from doing certain things, and it is no excuse for a violation of the agreement while it lasts that the beneficiary may at some time terminate it."

The court pointed out, as others have done, that there is a distinction between actions brought to compel performance of an affirmative undertaking to do something and those brought to restrain violation of a negative covenant to refrain from doing something and hence there is no lack of mutuality of obligation in a contract so as to prevent its enforcement by one of the parties, by reason of the fact that it provides for the right of such party to terminate the contract and discharge the other party thereto. This seems to me to be an adequate answer to that contention.

" Each case necessarily stands on its own facts, and whether a particular actor falls within the class of cases where an injunction will lie against him for breach of his negative covenant is in last analysis a question of fact." (*Winter Garden Co.* v. *Smith*, 282 F. 166, 170, *supra*. See, also, *Comstock* v. *Lopokowa*, 190 F. 599, *supra*.)

In the instant case it appears, also, that plaintiffs' damages for defendant's breach of contract cannot be determined with certainty.

As said in the *Winter Garden* case (*supra,* p. 171), courts are " not astute to find some way in which breaches of contract may be excused. A court of equity is, as was said in *T. B. Harms & Francis, Day & Hunter* v. *Stern,* 231 Fed. 645, 648, * * * ' a court of conscience, which within the scope of its powers is governed by its own rules,' and it manifests its value in the administration of justice in no more effective way than in constantly making clear that it will not tolerate deliberate and unconscionable breaches of contract."

The plaintiffs are entitled to judgment, with costs, but the judgment will provide that the injunction is granted upon condition that plaintiffs continue defendant in their employ pursuant to their agreements with him, if the defendant return to their employ within a reasonable time after notified by plaintiffs to return; such notice to be given by plaintiffs to defendant, promptly (see *Taylor Iron and Steel Co.* v. *Nichols,* 73 N. J. Eq. 684, 691); otherwise, the defendant will be deprived of earning a livelihood in the vocation for which he is specially fitted and this would be unduly severe, viewed from equitable principles. If, after being afforded an opportunity to return, he still refuses, he then has no right or standing to complain. Moreover, the granting of an injunction herein must necessarily rest upon the fact that both the obligation and opportunity of service under the agreements are still subsisting (*Taylor* case, *supra,* p. 691).

Findings passed upon. Submit decision and judgment in conformity therewith.