STARKEY ET AL. *v.* GALLOWAY ET AL.

[No. 17,822. Filed March 25, 1949. Transfer denied May 25, 1949.]

*Wallace & Wallace;* and *Carl F. Henthorn,* all of Covington; and *Foley, Foley & Burroughs,* of Crawfordsville, for appellants.

*Walter W. Spencer,* of Crawfordsville, and *Edward L. McCabe,* of Williamsport, for appellees.

DRAPER, J.—The appellants brought this action against the appellees to recover damages for the alleged conversion of 45 head of white-faced Hereford steers. Being denied a recovery, the appellants filed their motion for new trial which asserts only that the decision of the trial court is contrary to law. They appeal from the overruling of that motion.

The evidence discloses that on October 9, 1946, the appellees, who are brother and sister, were the owners of 45 head of steers which they had and kept on their

farm. The appellants were partners engaged in buying and selling livestock, and on that day, following some previous negotiations as to price, the appellant Starkey went to the farm and agreed with the appellee Courtland P. Galloway to buy the cattle at 20 cents per pound. Starkey had with him a written contract covering the sale and a check for $1000 to apply on the purchase price. Galloway told Starkey he (Galloway) did not need to sign the contract because his word was "as good as gold." Galloway also refused the check, saying he already had other uncashed checks on hand. Galloway told Starkey he had some corn he wanted to feed to the cattle as he had nothing else on the place to feed it to, but he would bring the cattle in as soon as the corn was fed up. He said he would bring the cattle whether the price went up or down. Starkey said "That's a deal." Galloway said "They are your cattle. I'll bring those cattle in as soon as that corn is gone." They shook hands and Starkey said "That's good enough for me. It's a deal. They are my cattle." Galloway said "They are your cattle. You have nothing to worry about." The sister was present and heard this conversation.

On October 15, 1946, the OPA ceiling price on steers was discontinued, with consequent increase in the selling price of steers. A few days later appellants asked Galloway when he would bring in the cattle and Galloway said he would not bring them—he had changed his mind and had backed out. On November 20, 1946, appellees sold the steers in Chicago for 32 cents per pound.

By this action the appellants seek to recover the net amount received by the appellees for the steers, less their value at 20 cents per pound.

There having been no note or memorandum in writing and nothing given to bind the contract, or in part

payment, the agreement of the parties is un-
enforcible by action unless the buyer accepted
all or part of the property and actually received
the same. Burns' 1943 Replacement, § 58-104.

The steers remained at all times in the custody of
the appellees, but that fact is not necessarily incon-
sistent with a receipt of the property by the
purchaser. We think the better and generally
accepted rule to be that a symbolical or con-
structive delivery and a constructive receipt or accept-
ance will satisfy the statute in a proper case, but we
fail to find the presence of any such in this evidence.
Receipt involves delivery. Delivery cannot be accom-
plished by words alone, nor can receipt be shown by
words alone, especially where such words are merely
a part of the agreement itself, and are spoken during
or before the making of the contract of sale, as was the
case here. *Shindler* v. *Houston* (1848), 1 N. Y. 261;
*Dehority* v. *Paxson et al.* (1884), 97 Ind. 253; *Devine*
v. *Warner* (1903), 75 Conn. 375, 53 Atl. 782; 49 Am.
Jur. § 275, p. 590. We realize that *Shindler* v. *Hous-
ton, supra,* has been criticized. Nevertheless, it has
been approved and adopted by our Supreme Court, and
we follow it both because we are required to and be-
cause we believe it to be sound.

To avoid the rule just stated, the appellants insist
the act of shaking hands was an unequivocal act or sym-
bol, over and beyond the making of the agree-
ment itself, which indicated the relinquishment
of dominion over the property by appellees and
the assumption thereof by appellants. But the hand-
shaking was merely a gesture—an unspoken part of
the agreement itself. It did not operate to presently
place the property within the power and under the
exclusive dominion of the buyer. It was an unspoken
promise, on honor, to carry out and perform the terms

of the agreement, including delivery at a later date. It was not delivery.

The appellants say "The act of the buyer, assented to by the seller as bailee, in giving the bailee instructions to keep the cattle, feed certain corn to them and bring them to buyer during a certain week, was the exercise of such dominion over them as satisfied the statute of frauds." This court has said that when a vendor sells property and retains possession thereof for the vendee as his agent, such a delivery will be valid providing there is an agreement to that effect. *Galbraith et al.* v. *Holmes et al.* (1896), 15 Ind. App. 34, 43 N. E. 575. See also *Bertelson* v. *Bower* (1882), 81 Ind. 512.

But the appellants were unsuccessful plaintiffs below, and suffered an adverse decision there. Only evidence sufficient to compel a finding that they became bailees would avail them. *Pearson Company, Inc.* v. *Cohen, et al.* (1949), 118 Ind. App. 699, 83 N. E. 2d 433. We find no evidence which would compel such a finding. The evidence would amply sustain the belief that the appellees agreed to sell the cattle only on condition they could keep them long enough to feed their corn into them and then bring them in, and that Starkey, instead of instructing Galloway to retain them for that purpose, merely acquiesced in that condition.

The appellants next assert the appellees fraudulently represented that it was not necessary to put the agreement in writing and, therefore, under the doctrine of equitable estoppel, the appellees are precluded from asserting the unenforcibility of the contract as being one within the statute of frauds. Their contention is based on the generally recognized rule that the statute of frauds, being designed to pre-

vent and not encourage fraud, may not be used as an instrument for the perpetration of fraud, and so the statute may under certain circumstances be rendered inoperative by an estoppel *in pais*. See discussion in 49 Am. Jur. 885, § 578 et seq.

We need not examine this contention further than to say that one who seeks to assert an equitable estoppel must affirmatively show that he has relied upon the conduct of the other party and has acted upon it in such a manner as to change his position for the worse; that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss. 49 Am. Jur. § 583, p. 890; 31 C. J. S., Estoppel, § 74, p. 276; *Bowes* v. *Lambert* (1944), 114 Ind. App. 364, 51 N. E. 2d 83, 897; *Chaplin et al.* v. *Baker* (1890), 124 Ind. 385, 24 N. E. 233. There is no suggestion of such a situation in the evidence, and so this contention must be denied.

The appellants lastly assert the statute was designed to guard against the dishonesty of parties and the perjury of witnesses, and it should have no application in a case where the party sought to be charged himself testifies to the making of the agreement. We have been cited to no case so holding. Whether the making of the contract is established by the testimony of the one party, the testimony of the other, or the testimony of both can in our opinion make no difference. The statute makes the contract unenforcible.

Judgment affirmed.

NOTE.—Reported in 84 N. E. 2d 731.