**WHITECO INDUSTRIES, INCORPORATED d/b/a Holiday Star Theatre and Holiday Festival Theatre, and Wachim Corporation, d/b/a Holiday Star Theatre and Holiday Festival Theatre, Defendants-Appellants,**

v.

**Gvozden M. KOPANI, Dominic Missimi and Sandra L. Burge, Plaintiffs-Appellees.**

**No. 75A03–8603–CV–68.**

Court of Appeals of Indiana, Third District.

Nov. 5, 1987.

Fred M. Cuppy, Kathryn D. Schmidt, Thomas, Burke, Dyerly & Cuppy, Richard L. Mostak, Merrillville, for defendants-appellants.

William H. Tobin, Steven T. Parkman, David M. Hamacher, Saul I. Ruman & Associates, Hammond, for plaintiffs-appellees.

GARRARD, Presiding Judge.

This case involves how the Statute of Frauds applies to employment contracts which may not be performed within one year.[1] *See* IC 32-2-1-1.

While there was dispute concerning the facts at trial, for purposes of Whiteco's appeal we consider them from the perspective favorable to the judgment. (Of course, on Kordos' cross-appeal from the judgment on the evidence entered against him, we will consider the evidence favorable to his claim.)

The essential facts may be simply stated. In 1979 Whiteco, as owner, employed Richard Kordos to serve as executive producer of the Holiday Star Theatre and of a companion operation to be known as the Festival Theatre. The Star Theatre planned to provide between 36 and 42 weeks of Las Vegas type entertainment each year. The Festival Theatre, which was intended as a means of more fully utilizing the facility, was to provide students' and children's productions, musicals and community classes.

As executive producer Kordos was, at least, clothed with the apparent authority to employ various staff people on behalf of Whiteco.

Shortly after he was employed Kordos telephoned Missimi in New York and subsequently hired him as an associate director for the Festival Theatre. Whiteco paid Missimi for a house hunting trip to Merrillville, and it paid his moving expenses.

After a trip to New York City, Kordos employed Kopani as a scenic designer and Burge as property mistress. Whiteco paid Kopani for a house hunting trip and for moving expenses. It does not appear that any moving expenses were paid for Burge.

Missimi, Kopani and Burge (sometimes hereinafter referred to collectively as "the employees") were each told by Kordos that the job was to be for an entire year, renewable thereafter.

The Star Theatre side of the operation opened in November, 1979 and the Festival side opened December 19th with a production of *Scrooge*. Attendance at *Scrooge* was very disappointing. The production lost over $200,000.

As a consequence of the losses on *Scrooge* Whiteco decided to terminate the Festival Theatre. Accordingly, on December 21 Kordos was advised of this decision and that the employees were to be terminated. He told the employees and each also received a letter from Whiteco's general manager terminating their services after December 31, 1979. Each was given two weeks' severance pay.

Kordos was asked to be available through January and was paid through January 31, 1980. He was then terminated.

Kordos and the other employees brought suit for damages for breach of their employment contracts. The trial court granted judgment on the evidence against Kordos at the conclusion of plaintiffs' evidence. The jury returned verdicts in favor of Missimi, Kopani and Burge and against three other former employee-plaintiffs. No appeal was taken by the latter three.

Whiteco now appeals the judgment entered in favor of the employees and Kordos appeals the judgment on the evidence entered against him.

The principal contention asserted by Whiteco is that the oral contracts of employment were within the Statute of Frauds and, thus, were unenforceable. It asserts that consequently the actual employment was subject to termination at any time.

---

1. The parties agree, and the record bears out, that the agreements with Kopani, Missimi and Burge could not have been performed within one year from the date of agreement and are facially within the statute.

The employees respond by conceding that the contracts were within the statute but, they assert, the statute should nevertheless be held inapplicable on grounds of promissory estoppel or constructive fraud.[2]

Whiteco contends that promissory estoppel and constructive fraud should be unavailable because they were not pleaded. It also contends that under the facts those doctrines are inapplicable.

Whiteco first asserts the failure of the employees to plead promissory estoppel or constructive fraud should have precluded finding in their favor on the basis of either contention. The argument is in error for two reasons.

■ Whiteco raised the Statute of Frauds defense in its answer. It claims the employees were then required to plead their avoidance of the statute in a reply. That, however, is not the requirement under our modern rules of pleading. Pursuant to Indiana Rules of Procedure, Trial Rule 7(A) a reply to an answer is not ordinarily necessary although the court in its discretion may order one.

"Matters formerly required to be pleaded by a reply or other subsequent pleading may be proved even though they are not pleaded."

Trial Rule 7(A). *See, e.g., Nichols v. Amax Coal Co.* (1986), Ind., 490 N.E.2d 754.

■ In the second place, the court set up these defenses to the statute as issues under the pretrial order. TR 16(J) authorizes the court following the pretrial conference to enter an order reciting *inter alia* "the amendments allowed to the pleading." When this was done those issues became issues for trial. *City of Hammond v. Drangmeister* (1977), 173 Ind.App. 476, 364 N.E.2d 157.

We turn then to the substance of these defenses with two initial observations.

The parties have consistently referred to the employees' theory of defense as "promissory estoppel." While that term is, perhaps, more familiar when employed in the context of an argument concerning lack of consideration, it has also been employed in a Statute of Frauds context. *See, e.g.* Annot., 56 A.L.R.3d 1037.

■ Also, the parties have combined for purposes of argument the claims of promissory estoppel and constructive fraud. We shall, therefore, do the same.[3]

■ The employees list five factors which, under the evidence favorable to them, they contend support avoidance of the Statute of Frauds. These are: (1) an express promise of one year employment; (2) the employees gave up their existing employment to accept the jobs; (3) they moved to Indiana from other states; two purchased homes and were confronted with the problem of what to do about selling these homes or seeking new employment outside their chosen field; (4) the timing of the termination made it extra-difficult to secure immediate work in theatre; and (5) the employees' job performance had been above and beyond reasonable expectation and constituted additional consideration.

First of all we note that the factors relied on do not possess the quality of those which courts have found sufficient to constitute an independent consideration.

As we explained in *Ohio Table Pad Co. v. Hogan* (1981), Ind.App., 424 N.E.2d 144, neither the actions involved in moving one's household to a new location nor the mere relinquishment of an existing employment are sufficient to constitute independent

---

2. No contention is presented that there was part performance that would remove these employment contracts from the ban of the statute. As stated in *Restatement of Contracts Second,* Sec. 130, where any promise in a contract cannot be performed within a year, all promises in the contract are within the Statute of Frauds until one party to the contract completes his performance.

3. To the extent fraud might constitute a distinctly separate ground for relief, there is no evidence in this case meeting the requirements of a knowing misrepresentation of a presently existing fact. *See, e.g., Blaising v. Mills* (1978), 176 Ind.App. 141, 374 N.E.2d 1166. *Compare, Eby v. York-Division, Borg-Warner* (1983), Ind.App., 455 N.E.2d 623, which in dictum erroneously cites *Blaising* as holding that constructive fraud may be based upon promissory misrepresentations.

consideration. Such actions are considered as merely placing the employee in a position to accept the employment. (It is also factually noteworthy that Whiteco separately paid moving expenses for both Missimi and Kopani.) As to the contention that the employees' job performance had been above and beyond reasonable expectation and, thus, constituted independent consideration it is, we hope, sufficient to point out that appellees do not press the contention nor is it suggested that the parties bargained for less than the employees' best efforts.

It is only where a different and substantial detriment is incurred such as releasing a claim for personal injuries or assignment of a lease to the employer that separate consideration has been found to exist. 424 N.E.2d 146.

Can then the oral promise of a one year term when supplemented by such activities create an injurious reliance which will remove the bar of the Statute of Frauds?

■ The employees urge that promissory estoppel/constructive fraud should be invoked to prevent Whiteco from relying upon the statute. They further urge that the reasons which supported Statute of Frauds legislation are no longer valid; that equity should not permit the use of the statute to work a fraud rather than to prevent one; and that in any event they should be entitled to relief in accord with *Restatement of Contracts, Second,* Sec. 139.

Whether the Statute of Frauds in general, or that section relating to contracts not to be performed within one year, in particular, have become outmoded is a question more properly addressed to the General Assembly. It is not the function of this court to repeal acts of the legislature on grounds that they are unwise or outmoded.

The problem with the appellees' claim is that the promise it depends upon is the promise of a full year's employment. In other words, it is the very promise which the statute declares unenforceable that the employees assert should remove their claim from the statute's operation.

Our decisions have held that no claim of estoppel or fraud may be so premised.

As the Supreme Court stated in *Kavanaugh v. England* (1953), 232 Ind. 54, 59, 110 N.E.2d 329, 331, in adopting the rule from other jurisdictions:

"[A] mere breach or violation by one of the parties of an oral agreement which is within the statute of frauds, or his denial of the agreement or refusal to perform it, is not of itself a fraud, either in equity or at law from which the courts will give relief or which will enable the other party to assert either rights or defenses based on the contract. There is no fraud in such a refusal. The party so refusing stands upon the law and has a right to refuse to be bound by such a contract." (citations omitted)

*See also ITT Cannon Electric, Inc. v. Brady* (1967), 141 Ind.App. 506, 230 N.E.2d 114 (no estoppel or fraud removing bar of statute to enforcement of oral promise to employ for eighteen months); *Starkey v. Galloway* (1949), 119 Ind.App. 287, 84 N.E.2d 731 (no bar to invoking statute upon an oral agreement to sell 45 head of cattle.)

Were this not the rule the statute would be rendered virtually meaningless because the frustrated claimant would always assert an oral promise/agreement to defeat by means of estoppel the statute's requirement for a written one. The contest would then concern the credibility of the evidence of an oral promise or agreement. That, of course, is precisely what the statute seeks to avoid.

■ *ITT Cannon Electric, Starkey* and *Kavanaugh* also dispose of the contention that equity will not permit the statute to be used to perpetrate fraud. Since the promise, itself, does not constitute a fraud, neither does it create a basis for equity to treat it as one. Indeed this "rule" of equity describes no more than the general rule of equitable estoppel.

■ Finally, the employees contend that in any event, Section 139 of *Restatement of Contracts (Second)* provides a basis for

affirming the judgment in their favor. That provision states:

> "(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
>
> (2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:
>
> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
>
> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
>
> (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
>
> (d) the reasonableness of the action or forbearance;
>
> (e) the extent to which the action or forbearance was foreseeable by the promisor."

Neither the briefs filed nor our research has disclosed any Indiana cases expressly considering Section 139. The comment to the section indicates that like Section 90 (which treats the traditional rule of promissory estoppel as a substitute for consideration) the standard of "avoiding injustice" states a flexible principle, but recognizes that the requirement of consideration is more easily displaced than the requirement of a writing.

We believe that the law of this state clearly defines the avoidance of "injustice" more narrowly than the drafters of the restatement envisioned. Rather, as the court stated in *Starkey*, in order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show:

> "... that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss." (citations omitted)

119 Ind.App. at 287, 84 N.E.2d 731.

In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

Most recently our Supreme Court, pursuant to Appellate Rule 11(B)(3) expressly adopted that portion of Judge Conover's dissent in *Romack v. Pub. Svc. Co. of Ind.* (1986), Ind.App., 499 N.E.2d 768, *rev'd.* 511 N.E.2d 1024, "as applied to plaintiff's action based on alleged breach of employment contract."

In that case the Fourth District had sustained a summary judgment over Judge Conover's dissent and had found an employee at will to have been terminable without cause. In dissent Judge Conover urged that the facts before the court were sufficient to constitute the kind of independent consideration necessary to require cause before the employee could be discharged. The facts relied upon by Judge Conover, and presumably adopted as critical by the Supreme Court, were that (1) by virtue of his training in highly specialized efforts of endeavor the employee was uniquely qualified for the position in question; (2) the employee had "lifetime employment" on the job he left; (3) he was recruited by the defendant employer to fill a position uniquely requiring a person possessing precisely the skills and abilities he had developed; (4) he advised the employer he would leave his existing job only if the new job offered the same permanency of employment, advancement and benefits; and (5) upon that basis he was told by the

defendant he would have "permanent employment" if he accepted the employment.

We find neither an unconscionable injury, as we have defined that term, nor independent consideration under *Romack* in the facts presented by Missimi, Kopani and Burge. The consequences relied upon by them are the kind of adverse consequences which normally attend the involuntary termination of someone's employment.

It follows, then, that the agreements concerning their employment were unenforceable pursuant to the Statute of Frauds which requires that contracts which cannot be performed within one year must be in writing, signed by the party charged or his representative. IC 32–2–1–1. For this reason the judgments in favor of the employees are contrary to law and must be reversed.

We turn then to the cross appeal of Mr. Kordos. Judge Conover urges in dissent that the facts presented concerning his employment sufficiently parallel those in *Romack* that it was error to grant a judgment on the evidence against. We disagree.

First of all, we note that the prospective term of Kordos' employment by Whiteco, according to Kordos' own theory, was only one year. While we do not believe *Romack* should necessarily be restricted to claims for "permanent" employment as opposed to a term of years, it is significant in evaluating the substantialness of the detriment according to the parties' own expectations to observe that whatever Kordos gave up, he was willing to agree that he could be terminated after only one year.

Secondly, while Kordos apparently possessed the necessary qualifications to serve as executive producer, we question whether he was "uniquely" qualified for that role under the intended connotation of that term. Does anyone meet the uniqueness requirement merely by virtue of having experience in a field requiring skill? For example, should lawyers, engineers, accountants, etc. all be uniquely qualified for positions requiring someone of their profession? How does the complexity or degree of specialization necessary to perform the work in the offered job affect the element of uniqueness? For example, in *Romack* would the officer have been uniquely qualified to act simply as a security guard? Did his special area of training provide specially needed qualifications to serve as the manager of a security system? Although we recognize the presence of an issue here which our courts will have to determine in applying *Romack*, we need not do so in this case since we find a more controlling reason for our result.

The essential requirement of *Romack* is that the employee give up a permanent employment or, at least, an employment which provided unique features of tenure, retirement rights, etc. to which the employee was then entitled and which he forfeited to accept the new employ. *See Ohio Table Pad, supra;* Annot., 60 A.L.R.3d 226. Merely surrendering an existing job in his own area of experience or expertise is insufficient.

The evidence before us fails to establish such permanent or unique tenure feature in the employment Kordos left to accept the position offered by Whiteco. Accordingly, we find that judgment on the evidence was not improper under *Romack.*

Kordos' principal contention, however, is that with respect to his own employment there was a sufficient writing to satisfy the Statute of Frauds. He refers to the letter directed to him by Whiteco dated March 12, 1979.[4]

---

4.
"Mr. Richard Kordos
1460 Larchmont
Buffalo Grove, IL 60090
Dear Dick,
It has been an extreme pleasure making your acquaintance, and I am very excited about your joining our organization. I believe we have the opportunity to create a team that can kindle a period of continued dramatic growth for each of us individually, and even more importantly collectively as an organization. This letter is to confirm the verbal agreement we made in regards to your joining our organization.
Your title would be 'Executive Producer, Holiday Star Theatre' or a title of your choosing if you feel it would be more appropriate, for which there will be a compensation of $42,-

■ In considering Kordos' argument we must bear in mind two limitations. On the one hand, to be a sufficient writing to satisfy the Statute of Frauds, the instrument must contain all the essential stipulations and undertakings of the verbal bargain. If any are omitted, the memorandum does not satisfy the statute. *ITT Cannon Electric, Inc., supra,* 141 Ind.App. at 512, 230 N.E.2d at 117, citing *Block v. Sherman* (1941), 109 Ind.App. 330, 34 N.E.2d 951.

■ On the other hand, if the contract is for an indefinite term, our law considers it to create employment at will. *Montgomery Ward & Co. v. Guignet* (1942), 112 Ind.App. 661, 45 N.E.2d 337.

■ Kordos attempts to negotiate his claim past these hurdles by asserting that *Holcomb & Hoke Mfg. Co. v. Younge* (1937), 103 Ind.App. 439, 8 N.E.2d 426 controls and would permit the jury to find as a question of fact that he was employed for a term of one year.

The statement from *Holcomb* upon which he relies is as follows:

"The fact that payment is to be made in accordance with a time unit is evidence, in connection with other relevant facts, indicating that the agreement is

500.00 per year plus a car. There will also be a bonus of 25% of your base salary, the exact structure of which is to be mutually agreed upon. It is understood that the scope of your responsibilities include the day-to-day operations of the Holiday Star Theatre. These responsibilities will be defined in a Position Description that will be composed by a mutual effort between Bill Wellman, yourself and myself.

The first three months of all employment is probationary, after which employment will take a permanent status. Salary reviews will be on an annual basis.

It is understood that you will start employment Monday, April 23, 1979. Thereafter, after being taken on our payroll, you may expect several days to be made available to yourself for moving purposes. Wachim Corp. will pay the commission incurred with the sale of your present house. They will also pay the moving of your personal belongings to Merrillville. We do ask that you solicit three separate bids in regards to the moving expense.

As a management employee of Wachim Corp., you would be entitled to two weeks paid vacation at the completion of one year of employment. You will be placed on our management

for such unit. Thus, an agreement for the period of time mentioned as that for payment, or as the basis for payment, is indicated if one party pays consideration aside from his promise to employ or to serve; or if the agency is an important one and of a kind such that a temporary appointment would not be likely to be made; or if, as the principal has notice, the employee has made an important change in his general relations in order to accept the position, such as the removal of himself and his things to a new place; or if he has given up a position of some value in order to enter the employment. In the absence of other facts, a custom in the business of which the parties should know, or a usage by the principal as to periods of employment of which the agent should know, is controlling. *Restatement of the Law of Agency,* American Law Institute, Sec. 442, p. 1031."

In the first place the statement was taken from a comment to Section 442 of the restatement and omits reference to a significant preceding portion of the comment.

Section 442 of *Restatement of the Law, Agency 2nd*[5] provides:

'Plan A' of our health and welfare plan of which your premiums will be company paid. After one year's employment from the anniversary date of December 31, 1979, you will also be placed in the company profit sharing plan.

Please sign the enclosed copy of this letter as to date of acceptance and return it to me as soon as possible. Again, Dick, it is my pleasure to have had the opportunity to become acquainted with you, and I am looking forward to a long and mutually beneficial relationship.

Respectfully,
/s/ Bruce W. White
Bruce W. White
President
WACHIM CORP.

BWW/dj
Enclosure

P.S. After having had the pleasure of meeting Nancy, your joining us is a double pleasure. We're very anxious and excited not only about your joining our team, but the addition of your fine family to the local community. I will be glad to assist in your relocation in any way I can."

**5.** The section and comment are identical with those of the first restatement.

"Unless otherwise agreed, mutual promises by principal and agent to employ and to serve create obligations to employ and to serve which are terminable upon notice by either party; if neither party terminates the employment, it may terminate by lapse of time or by supervening events."

Significantly, the omitted portion of the comment which *precedes* that actually quoted without attribution in *Holcomb* states:

"The fact that a servant or other agent is employed under a contract which merely specifies a salary proportionate to units of time which are commonly used for the purposes of accounting or payment, such as a month or a year, does not, of itself, indicate that the parties have agreed that the employment is to continue for the stated unit of time. Such a specification merely indicates the rate at which the salary is earned or is to be paid, and either party is privileged to terminate the relationship at any time unless further facts exist."

In addition, Section 468 of the same restatement recognizes that where a statute of frauds applies to an employment agreement it is to be given effect.

Secondly, this aspect of *Holcomb* must be seriously questioned in view of the majority decision in *Ewing v. Bd. of Trustees* (1985), Ind.App., 486 N.E.2d 1094, *transfer denied,* over Judge Sullivan's dissent which urged that *Holcomb* be either overruled expressly or that it be applied to reverse the summary judgment there in question.

Despite the dissent and on facts remarkably similar to ours, the court affirmed summary judgment for the employer even though the employee's salary had been stated as an annual amount and materials before the court indicated her employment "was an important one of a kind that a temporary and indefinite employment ... would not likely have been made."

Thus, even though the majority did not expressly overrule *Holcomb* it must be deemed to have, in fact, done so to the extent that *Holcomb* might be read to permit either (a) a fact finder to infer a specific tenure of service merely from the manner of stating an employee's rate of pay, or (b) from the statement of rate together with the factor of the importance of the employment.

Apart from its failure to actually state a one year term, the letter Kordos relies upon fails for another reason to satisfy the requirement of the Statute of Frauds.

The letter clearly contemplated further negotiations and resolutions as to both the duties to be performed by Kordos and the "structure" for the proposed bonus. It was an agreement to agree, rather than an express agreement.

As such it failed to meet the requirement of the statute that all the essential provisions of the agreement be contained in the writing. *ITT Cannon Elec., Inc., supra.*

The letter of March 12, 1979 was insufficient to comply with the Statute of Frauds. The court did not err in granting the judgment on the evidence.

The judgment against Kordos is affirmed, the judgments in favor of Kopani, Missimi and Burge are reversed and remanded with instructions to enter judgment in favor of the appellants. Costs are taxed to the appellees and cross appellant, one fourth to cross appellant Kordos, and three fourths to appellees Kopani, Missimi and Burge, jointly and severally.

HOFFMAN, J., concurs.

CONOVER, J., concurs in result in part and dissents in part and files separate opinion.

CONOVER, Judge, dissenting.

I concur in the result reached by the majority as to Missimi, Burge, and Kopani. However, I respectfully dissent as to the majority's holding regarding Kordos for the reasons stated in my dissent in *Romack v. Public Service Co. of Indiana* (1986), Ind.App., 499 N.E.2d 768, *trans. granted,* dissent adopted in part, 511 N.E.2d 1024.

The following facts here regarding Kordos parallel those in *Romack:*

(a) Kordos was uniquely qualified for the specialized position Whiteco sought to fill, namely, theatrical producer, by virtue of his talent, education, training, and experience;

(b) Kordos did not seek employment with Whiteco. He was recruited by Whiteco with promises of a substantial salary increase and permanent employment; and

(c) Kordos, at the time he was recruited by Whiteco, was not looking for new employment. He was already successfully employed as a theatrical producer.

The majority questions whether Kordos was uniquely qualified for the position Whiteco recruited him to fill. The circumstances surrounding the recruiting and hiring of Kordos by Whiteco leads me to the conclusion a jury could readily find he was indeed.

In *Frederick Brothers Artist Corp. v. Yates* (1946), 61 N.Y.S.2d 478, 186 Misc. 871, the term "unique" was defined as follows:

"Unique" is a term not capable of exact or precise definition; it depends upon the circumstances and conditions in which it is applied. In one instance, as pertaining to services, it may mean ability and capability of unparalleled character; in another, as indicating one who is specially skillful and individualistic; again, it may mean one possessed of unusual personality; also, as being one possessed of valuable personal contacts in the form of means of approach to key men in a particular industry. When the term is used the background which called it forth must be considered.

In my opinion, the trial court erred by sustaining the T.R. 50 motion for judgment on the evidence. Kordos made out a *prima facie* case below that should have gone to the jury.

I would reverse and remand for a new trial as to Kordos.