Sean P. KEATING, Appellant
(Plaintiff Below),

v.

Bryce M. BURTON, Burton Mechanical
Contractors, Inc. and Ebara Corp.,
Appellees (Defendants Below).

No. 25A03–8902–CV–40.

Court of Appeals of Indiana,
Third District.

Oct. 24, 1989.

Alan H. Lobley, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Stephen C. Carlson, Thomas A. Roberts, Gloria R. Christopherson, Sidley & Austin, Chicago, Ill., Richard W. Morgan, Mark D. Boveri, Barnes & Thornburg, South Bend, for appellees.

STATON, Judge.

Sean P. Keating appeals the trial court's order dismissing his Amended Complaint for failure to state a claim upon which relief could be granted. The sole issue raised is whether the Statute of Frauds precludes Keating's claim for relief.

We reverse.

The Amended Complaint alleged, in pertinent part:

1. The plaintiff, Sean P. Keating, (hereinafter "Keating") is a resident and citizen of the State of Indiana. The defendant, Bryce M. Burton, (hereinafter "Burton") is a resident of Fulton County, Indiana and a citizen of the State of Indiana. The defendant Burton Mechanical Contractors, Inc. (hereinafter "Mechanical") is a corporation organized and existing under the laws of the State of Indiana and maintains its principal place of business in Rochester, Indiana....

2. Prior to 1981, Keating was employed by Sycamore Engineering, Inc. in Terre Haute, Indiana as manager of mechanical contracting. In 1981, Keating left the employ of Sycamore Engineering, Inc. to purchase a mechanical contracting business in Lafayette, Indiana which he incorporated as Nelson–Keating, Inc. At the time of his purchase of that business, it had contracts for the maintenance of mechanical systems which provided a ba-

sic income for the company. The balance of its work was generally acquired by competitive bidding. Over the years Nelson–Keating, Inc.'s business increased and the plaintiff believed it was a growing business with a substantial future.

3. In 1987, Burton, age 65 at the time, owned all of the shares of stock of Mechanical. Burton had no relatives who desired to enter the business. Burton was searching for a person experienced in running a mechanical contracting business to take over the operation of Mechanical and to purchase the shares of stock in Mechanical. In the course of this search, Keating was recommended to Burton as such a person. As a result of this recommendation, Keating and Burton met in February and March of 1987. At that time, Burton gave to Keating a draft contract. Keating could not accept all of the terms in that draft contract but Burton individually and on behalf of Mechanical, over a period of a few weeks, reached the following agreement with Keating:

a. Keating would cease working for Nelson–Keating, Inc., move to Rochester, Indiana, and commence full-time employment with Mechanical.

b. Keating would be paid a salary of $5,500.00 a month plus a yearly bonus of sufficient size at the end of each of the next three (3) years to enable him to purchase forty-nine percent (49%) of the stock of Mechanical.

c. The purchase price was to be net book value adjusted to include an estimate of future gross profit in respect to contracts then in progress or awarded and reduced by state and federal income taxes. Also to be excluded from book value were any assets or liabilities of the Air–Vac and Transportation Divisions.

d. Keating was to have the option to purchase all or part of the shares for a period of eight (8) years from the date of his employment. However, it could not be exercised before March of 1990. After acquiring forty-nine percent (49%) of the shares, Keating could only exercise the option for the balance of the fifty-one percent (51%) of the shares.

e. Keating would take no action to cause the termination of Mechanical's status as a "S Corporation" under Section 1361 of the Internal Revenue Code.

f. At any time during the term of the agreement, Burton could cause the Air–Vac and Transportation Division of Mechanical to be distributed to him.

g. The parties' lawyers would cause this agreement to be reduced to the proper form.

4. Upon the making of this agreement, Keating ceased working for Nelson–Keating, Inc., arranged to have the business of Nelson–Keating, Inc. wound down, moved to Rochester, Indiana, and commenced working full-time for Mechanical on or about March 15, 1987.

5. On or about April 7, 1987, Burton's and Mechanical's lawyers transmitted to Keating's lawyer the letter and draft agreements attached hereto as Exhibits A1, A2 and A3. On April 8, Keating's lawyer forwarded the drafts to Burton and Keating.

6. Keating was in agreement with the draft agreements except for the provision for termination for cause at the sole discretion of Burton in the employment agreement. Burton and Keating then agreed to resolve this problem in the employment agreement.

7. Keating continued to work full-time for Mechanical and after winding down Nelson–Keating, Inc., closed out its maintenance contracts.

8. When the employment contract issue had not been resolved by the end of 1987, Keating went to his lawyer because he was concerned about the failure to get the employment contract resolved before Burton left on a world tour with his wife at the beginning of 1988. Keating's lawyer called Burton and Burton reaffirmed the agreement.

9. After Burton returned from his world tour at the end of April in 1988, he engaged in negotiations with Ebara Corp. for the sale of the mechanical con-

tracting division of Mechanical without the knowledge of Keating. At the same time, he instructed Keating to bid no more work and began picking at what were alleged to be small mistakes by Keating. On September 10, 1988, Burton had so restricted Keating's responsibilities that Keating stated to Burton that there was nothing left for him to do at Mechanical and Burton replied that he would pay him one month's salary. Keating then left Mechanical's employ.

10. By reason of Keating's reliance on the employment agreement between Mechanical and Keating, Keating had closed down Nelson–Keating, Inc. and allowed the maintenance contracts to go to competitors. By reason of this, Keating is not in a position to start up Nelson–Keating, Inc. and has thus lost the opportunity of continuing to develop his own mechanical contracting business.

\* \* \* \* \* \*

12. Keating has been damaged by Mechanical's failure to honor the agreement and has been deprived from the opportunity of exercising the option to purchase the shares of stock granted to him by Burton, the amount of which damage is not presently ascertainable.

13. Burton's and Mechanical's actions were fraudulent and done with malice and reckless disregard of Keating's rights and position and Keating is entitled to recover punitive damages.

WHEREFORE, the plaintiff prays for judgment against Burton and Mechanical, for the damage he has suffered by reason of their breach of the agreement with him, punitive damages, the costs of this action and for all further just relief.

### COUNT II

1–13. Plaintiff incorporates by reference paragraphs 1 through 13 of Count I.

14. In the spring of 1988, Burton advised Keating that One Hundred Thousand Dollars ($100,000.00) had been set aside as of December 31, 1987 as his bonus for the purchase of shares of stock pursuant to the stock option agreement.

15. Pursuant to the terms of the stock option agreement, Keating cannot exercise the option until March of 1990.

WHEREFORE, the plaintiff prays that the court enter declaratory judgment that he has the right to exercise the option to purchase all or part of the shares of Mechanical's stock in accordance with the option agreement after March of 1990 and that the $100,000.00 Mechanical is presently holding for his account be applied to the purchase price on such option, injunctions as may be necessary to protect this position, the costs of this action and for all further just relief.

(R. 2–6.)

Burton moved to dismiss the Amended Complaint on the grounds that the Statute of Frauds precluded Keating's claims for breach of contract and declaratory judgment. The trial court agreed and dismissed the complaint.

When reviewing a motion to dismiss for failure to state a claim, we must determine whether the complaint, in the light most favorable to the plaintiff and with every inference drawn in his favor, is sufficient to constitute any valid claims. *Lincoln National Bank v. Mundinger* (1988), Ind. App., 528 N.E.2d 829, 832.

 There is no question that both the alleged employment agreement, which was for a term of three years, and the stock option agreement fall within the applicable Statute of Frauds because neither agreement was reduced to a writing signed by Burton.[1] See I.C. 32–2–1–1 (contract that cannot be performed within one year); I.C.

---

1. Keating does argue that the Stock Option Agreement is not barred by the Statute of Frauds because a draft agreement was sent to him signed by Burton's attorney as his agent. However, the draft agreement was merely enclosed with a signed letter from Burton's attorney to Keating's attorney for review. The draft agreement itself was not signed and the letter made it clear that some portions of the agreement were subject to further negotiation. This does not satisfy the Statute of Frauds.

26-1-8-319 (contract for the sale of securities).

■ In order to avoid operation of the Statute of Frauds, Keating must show

... that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

*Whiteco Industries, Inc. v. Kopani* (1987), Ind.App., 514 N.E.2d 840, 845, *trans. denied; quoting Starkey v. Galloway* (1949), 119 Ind.App. 287, 84 N.E.2d 731.

In determining whether such an unjust and unconscionable injury and loss existed in *Whiteco,* this court applied the same factors used to determine whether independent consideration exists to change an employment contract for an indefinite term (terminable-at-will) to one for permanent employment (terminable for good cause), as set out in *Romack v. Public Service Co. of Ind.* (1986), Ind.App., 499 N.E.2d 768, *rev'd, dissent adopted in part* 511 N.E.2d 1024, *reh. denied.* The portion of Judge Conover's dissent adopted by the supreme court discussed the facts constituting sufficient independent consideration. Those facts were that 1) the employee was uniquely qualified for the position; 2) the employee left permanent employment to accept the offer; 3) the employer recruited the employee to fill the position; 4) the employee advised the employer the new job would have to offer the same permanency of employment; and 5) the employer told the employee he would have permanent employment if he accepted the job offer.

We note that the prospective term of Keating's employment by Burton was only for three years. As was stated by this court in *Whiteco,*

[w]hile we do not believe *Romack* should necessarily be restricted to claims for "permanent" employment as opposed to a term of years, it is significant in evaluating the substantialness of the detriment according to the parties' own expectations to observe that whatever Kordos gave up, he was willing to agree that he could be terminated after only one year.

514 N.E.2d at 846. The essential requirement is that the employee give up a permanent employment or an employment which provided unique features of tenure, retirement rights, etc. to which the employee was then entitled and which he forfeited to accept the new employment. *Id.*

With these principles in mind, we turn to Keating's allegations. He gave up his growing mechanical contracting business that had a substantial future in order to accept Burton's offer to run Mechanical for three years. If Keating's expectations were only for a three year term with Burton's company, estoppel would not work to bar operation of the Statute of Frauds. However, under the alleged Stock Option Agreement Keating had the opportunity to become a shareholder of Mechanical after his three year term, with the possibility of buying out Burton. Thus, Keating was not giving up his own promising business for a mere three year employment with Burton. He was giving up his business for the prospect of taking over Mechanical as the sole shareholder.

We conclude that these allegations, if proved, constitute an unjust and unconscionable injury and loss sufficient to remove the claim from operation of the Statute of Frauds. Because Keating's Amended Complaint states a claim upon which relief can be granted, we reverse the trial court's judgment dismissing the Amended Complaint.

Reversed.

HOFFMAN and MILLER, JJ., concur.